[1] This is a suit to recover damages for a gunshot injury as a result of an altercation which occurred at Benny's Tea Room in Shreveport, Louisiana. The plaintiff is Samuel Harris and the defendants are Stafford Pineset and his homeowners insurer, Republic Underwriters Insurance Company. Defendants appeal the trial court judgment awarding plaintiff $165,000.00 in general damages and $38,728.25 in medical expenses. Plaintiff neither appealed nor answered the appeal.
[2] Defendants' appeal raises the following issues:
[3] (1) the negligence of Pineset;
[4] (2) the contributory negligence of plaintiff, and
[5] (3) damages.
[6] We find the district court clearly wrong in finding Pineset's negligence to be the sole cause of plaintiff's injuries. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978), on remand, 370 So.2d 1262, writ den.,374 So.2d 660 (1979). Accordingly, we reverse and apportion negligence at 10% to plaintiff and 90% to Pineset.
[7] Background Facts
[8] On the evening of April 27, 1984, Pineset met his wife and her friend, Beverly Franklin, at Benny's Tea Room on Crawford Street in Shreveport. Shortly after they arrived, Pineset put a few quarters in the jukebox, made several selections and left two credits on the machine. Pineset joined his wife and Ms. Franklin at a table where *West Page 502 
they drank some beer. Plaintiff subsequently arrived at Benny's Tea Room, purchased a beer and proceeded to the jukebox where he made at least one selection. The evidence is in conflict as to whether plaintiff paid for his selections or used the credits left by Pineset.
[9] Pineset requested plaintiff to leave some quarters in the jukebox to replace the credits he used. Plaintiff denied using Pineset's credits insisting he paid for his selections. Plaintiff returned to the bar, sat down and began to beckon Pineset to come to the bar, but Pineset refused. Pineset testified plaintiff then proceeded to Pineset's table, kicking a chair on the way and threatening to "chop-up" Pineset using karate if he refused to follow plaintiff outside. Pineset stated he responded to the demand and as they went out the door, plaintiff started using profane language and grabbed him. Pineset testified he then pulled a pistol, a tussle ensued and when plaintiff grabbed the barrel, the pistol accidently discharged with the bullet striking plaintiff in the abdomen. Pineset testified he did not intend to shoot plaintiff, but only to "frighten him off."
[10] Plaintiff testified he arrived at Benny's Tea Room, ordered a beer and proceeded to the jukebox where he observed the credit light. Plaintiff inquired if anyone had played a record and thought he heard Pineset say no. Plaintiff then put a quarter in the jukebox, made a selection and returned to the bar. At this point, Pineset accused plaintiff of using one of his selections which plaintiff denied. After some discussion across the bar, plaintiff walked over to Pineset's table, denied owing any money and the two proceeded outside. While arguing with Pineset outside, plaintiff testified he observed a gun on Pineset and panicked. A tussle ensued resulting in plaintiff being shot in the abdomen. Plaintiff testified he did not kick the chair or threaten Pineset with karate.
[11] Plaintiff was taken to the Shumpert Medical Center and subsequently transferred to the LSU Hospital. As a result of the gunshot wound, he was required to undergo seven surgical procedures during the course of one year, including a colostomy.
[12] The trial court, in written reasons for judgment, concluded there was insufficient evidence to find plaintiff threatened Pineset, made advances or used abusive language which would justify a battery. Even if there was some provocation on plaintiff's part, the trial court considered Pineset's use of the pistol amounted to excessive force under the circumstances. The trial court awarded plaintiff $165,000.00 in general damages and $38,728.25 in medical expenses. $100,000.00 of this award was against Pineset and Republic Underwriters Ins. Co., in solido, and the remainder of the award was against Pineset alone.
[13] NEGLIGENCE OF PINESET/CONTRIBUTORY NEGLIGENCE OFPLAINTIFF
[14] Pineset contends the trial court erred in failing to find his actions constituted self-defense under the circumstances. He further contends the trial court erred in failing to find plaintiff's negligence contributed to his injuries. Pineset argues plaintiff threatened to use karate to chop him up and invited him outside to fight. Pineset contends once outside, plaintiff grabbed the gun and caused it to discharge.
[15] Plaintiff contends after the initial argument, he withdrew, but Pineset continued to press the matter. He argues Pineset could have obtained help from the bartender or called the police, but failed to. Plaintiff further contends he made no threats to Pineset while in the lounge. For these reasons, plaintiff argues he was not contributorily negligent and Pineset was not acting in self defense.
[16] The trial judge is in a better position to evaluate the credibility of witnesses and the weight of evidence than an appellate court who does not see or hear the witnesses. For this reason, a reviewing court should adopt the trial court's findings as its own in the absence of clear error, even if other conclusions from the same evidence *West Page 503 
are equally reasonable.Arceneaux v. Domingue, supra; Perkins v. Certa,469 So.2d 359 (La.App. 2d Cir. 1985); Andrepont v.Naguin, 345 So.2d 1216 (La.App. 1st Cir. 1977).
[17] In actions for damages for battery a plaintiff cannot recover if the evidence establishes he was at fault in provoking the difficulty in which he is injured, unless the person retaliating uses excessive force to repel the aggression.Tripoli v. Gurry, 253 La. 473, 218 So.2d 563 (1969);Perkins v. Certa, supra; Bray v. Isbell,458 So.2d 594 (La.App. 3d Cir. 1984), writ den., 462 So.2d 210
(La. 1985). Conduct or action which contributes to the circumstances giving rise to the injury, but which does not justify the actual battery, may be considered for the purpose of mitigating the plaintiff's damages. Andrepont v. Naquin,
supra; Downey v. Clark, 426 So.2d 331 (La.App. 2d Cir. 1983); Neville v. Johnson, 398 So.2d 111 (La.App. 3d Cir. 1981). Resort to the use of a dangerous weapon to repel an attack is not justifiable except in exceptional cases where the actor's fear of the danger is not only genuine, but is founded upon facts which would be likely to produce similar emotions in men of reasonable prudence. Edwards v. Great American Ins. Co.,146 So.2d 260 (La.App. 2d Cir. 1962); Bray v. Isbell,
supra.
[18] The trial judge concluded plaintiff's conduct did not contribute to his injuries. However, the trial judge made no finding as to which party invited the other party to go outside of the lounge to settle the dispute.
[19] We conclude the totality of the evidence mandates the conclusion plaintiff voluntarily participated in the altercation with Pineset and this conduct contributed to the circumstances giving rise to his injury. Plaintiff admitted he voluntarily went outside with Pineset where they participated in an argument. Plaintiff then engaged in the physical encounter with Pineset after he saw the gun. He testified that when he observed a gun on Pineset while outside the bar, he panicked and a tussle ensued. These facts as related by the plaintiff, require the conclusion that plaintiff's conduct contributed to the physical encounter wherein the pistol in the hands of Pineset accidently fired. The trial judge's finding that plaintiff's conduct did not contribute to his injury is clearly wrong.
[20] Pineset's use of the pistol is not justifiable because, under these circumstances, Pineset's fear of a fight with plaintiff, who was physically smaller than Pineset, would not be likely to produce similar emotions in men of reasonable prudence. A reasonable man would not have found it necessary to use a gun to repel the plaintiff in any physical encounter that might have occurred. See Edwards v. Great American Ins. Co., supra.
[21] LSA-C.C. art. 2323 provides:
[22] "When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss."
[23] Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own safety and protection, that standard being that of a reasonable man under like circumstances. Straley v.Calongne Drayage Storage, Inc., 346 So.2d 171 (La. 1977);Craft v. Caldwell Parish Police Jury, 455 So.2d 1226
(La.App. 2d Cir. 1984).
[24] The jurisprudential rules of mitigation contained in the cases cited are applicable to the claim of plaintiff, Samuel Harris, and would mandate a reduction of the damages to which he would otherwise have been entitled for his injuries. The plaintiff's fault contributing to the cause of his damages can be equated to contributory negligence which is conduct of a plaintiff which falls below the standard of care to *West Page 504 
which a reasonable man would conform for his own safety. We find that plaintiff's conduct is contributory negligence within the contemplation of LSA-C.C. art. 2323 and the damages to which he is entitled is subject to a reduction under the comparative negligence principles enumerated in that code article. The principles of comparative negligence and the guidelines applicable to them provide a sounder method to determine the amount to which the plaintiff is entitled than the very general case by case damage evaluations that are available under the principles of mitigation. For these reasons we choose to apply comparative negligence to determine the damages to which plaintiff is entitled.
[25] In Watson v. State Farm Fire Cas. Co., 469 So.2d 967
(La. 1985), the supreme court approved the following guidelines for the apportionment of fault in cases involving comparative negligence:
[26] "In determining the percentage of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed."
[27] The court stated the following factors may influence the degree of fault assigned to the parties involved:
[28] (1) whether the conduct resulted from inadvertence or involved an awareness of the danger;
[29] (2) how great a risk was created by the conduct;
[30] (3) the significance of what was sought by the conduct;
[31] (4) the capacities of the actor, whether superior or inferior; or
[32] (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
[33] The relationship between the negligent conduct and the harm to the plaintiff is a consideration in determining the relative fault of the parties.
[34] Our consideration of these factors in the instant case, suggest plaintiff was 10% at fault and Pineset 90% at fault in causing the injuries to plaintiff. The conduct of plaintiff and Pineset in arguing over the jukebox and agreeing to exit the bar to settle the matter created a great risk and involved an awareness of the danger on the part of both parties. Pineset's possession of a concealed revolver created an even greater risk of which only he was aware. What Pineset sought by his conduct, replacement of the credits on the jukebox allegedly used by plaintiff, was of very little significance. Plaintiff sought by his conduct to defend his contention that he paid for the selection he made on the jukebox and is also of little significance. We note Pineset is physically larger than plaintiff and was armed with a gun. When outside the bar, plaintiff testified he panicked when he observed the gun. At this point the plaintiff, fully aware of the dangerous situation, should have hastily departed instead of becoming involved in the physical encounter with Pineset which resulted in the accidental discharge of the pistol. In essence both parties argued over the selections made on the jukebox and agreed to exit the bar to settle the matter and voluntarily engaged in the fight with each other. The greater fault lies with Pineset who brought the gun to the site of the controversy and injected it into the controversy by drawing it from his belt and pointing it at plaintiff simultaneous with the physical contact between the two participants. We, therefore, apportion fault at 10% to plaintiff and 90% to Pineset.
[35] WAS THE TRIAL COURT'S GENERAL DAMAGE AWARD EXCESSIVE?
[36] The trial court awarded plaintiff $165,000.00 in general damages allocating $100,000.00 to physical pain and suffering, $50,000.00 to permanent disability, loss of physical function and loss of earning capacity and $15,000.00 to mental anguish and distress.
[37] Defendants contend this award is excessive because plaintiff is a 38 year old single man who has engaged in infrequent light work for eight years proceeding his injury. Defendants argue there was no medical testimony plaintiff suffered permanent disability, *West Page 505 
is unable to perform intermittent jobs and will suffer pain on a permanent basis. They further argue plaintiff completely recovered a year before trial and was taking no medication at the time of trial.
[38] Plaintiff points out he was required to undergo seven major operations, including a colostomy, as a result of the gunshot. He contends he suffered permanent scarring and adhesions in his abdomen. He further contends he experienced chronic pain, intestinal obstructions, nausea, diarrhea and will suffer future complications as a result of his injuries. For these reasons plaintiff contends the trial judge did not abuse his discretion in awarding him $165,000.00 in general damage.
[39] LSA-C.C. art. 2324.1 provides that much discretion must be left to the trial judge in the assessment of general damages. Before a general damage award can be changed on appeal, it must first be determined that the trial judge has abused his great discretion. This determination must be made upon the peculiar facts of each case and with due regard for the fact that the trial judge is in the best position to evaluate the credibility of the witnesses, including their testimony about the nature and extent of their injuries. Boswell v. Roy O. Martin LumberCo., Inc., 363 So.2d 506 (La. 1978); Wilson and Tyler v.Richardson, 476 So.2d 899 (La.App. 2d Cir. 1985), writden., 478 So.2d 907 (La. 1985).
[40] "Thus, the initial inquiry must always be directed at whether the trial court's award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of facts' much discretion. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered excessive or insufficient." Reck v. Stevens, 373 So.2d 498
(La. 1979).
[41] Plaintiff received a gunshot wound to his lower abdomen. He endured seven major operations including a colostomy and surgery on his ureter. Fecal discharge and urine leakage into plaintiff's abdominal cavity caused extensive scarring and adhesions, which are permanent. Plaintiff was hospitalized for 44 days and incurred medical expenses in the sum of $38,728.25. The evidence supports the fact that prior to the shooting, plaintiff was in reasonably good physical condition and able to do physical work. As a result of his injuries, plaintiff has continued pain and is unable to do physical work for a sustained period.
[42] Defendants contend the trial court abused its discretion in allocating $50,000.00 of the general damage award to permanent disability, loss of physical function and loss of earning capacity. Defendants argue there is no medical evidence that plaintiff is functionally disabled and he has not worked regularly since 1976. He points out plaintiff earned $200.00 in 1981 and $300.00 in 1983 and there is no evidence he could not earn the same amount in the future. Additionally, defendants contend the trial court's allocation of $15,000.00 of the general damage award to mental anguish constitutes double recovery and should be deleted.
[43] Plaintiff contends the award for loss of physical function relates to the inability to void his bowels on a regular basis and the continued weakness in his legs. He argues the award for permanent disability relates to his inability to play sports and interact with his family and friends. In addition, plaintiff argues the award for loss of earning capacity relates to the deprivation of what he could have earned, not what he actually earned in previous years.
[44] Separate awards for loss of earning capacity and permanent disability are appropriate when such damages are supported by competent evidence. Reeves v. Louisiana Arkansas RailwayCo., 304 So.2d 370 (La.App. 1st Cir. 1974), writden., 305 So.2d 123 (La. 1974); Miller v. State, ThroughDept. of Transportation, 484 So.2d 993 (La.App. 3d Cir. 1986), writ den., 488 So.2d 200 (La. 1986).
[45] Earning capacity in itself is not necessarily determined by actual loss; *West Page 506 
damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact he may never have seen fit to take advantage of that capacity. The theory is that the injury has deprived him to a capacity he would have been entitled to enjoy even though he never profited from it. Folse v. Fakouri, 371 So.2d 1120 (La. 1979);Green v. Farmers Ins. Co., 412 So.2d 1136 (La.App. 2d Cir. 1982). Because damages for the impairment of earning capacity cannot be calculated with certainty, the trial judge is accorded great discretion in making such an award. Hill v.Sills, 404 So.2d 1323 (La.App. 2d Cir. 1981).
[46] A tort which gives rise to mental anguish or emotional upset on the part of the injured party creates a claim for damages which is separate and distinct from any claim for physical pain and suffering. Trahan v. Perkins,197 So.2d 96 (La.App. 1st Cir. 1967); Taylor v. Allstate Ins.Co., 205 So.2d 807 (La.App. 1st Cir. 1967).
[47] The trial judge allocated $50,000.00 of the general damage award to permanent disability, loss of physical function and loss of earning capacity, but did not assign a specific amount for each award. The record reveals plaintiff continues to suffer some pain, although the doctors who testified could not assign a percentage of disability to plaintiff as a result of the injury. Although plaintiff has not worked regularly since 1976 and earned only $200.00 in 1981 and $300.00 in 1983, the record reveals he was able to do substantial physical work prior to the injury. As a result of his injury, plaintiff is unable to do physical work for a sustained period and his earning capacity has, therefore, been impaired. He has a substantial problem of constipation. For these reasons, we cannot say the trial judge abused his discretion in allocating $50,000.00 of the general damage award to permanent disability, loss of physical function and loss of earning capacity. The nature of plaintiff's injury, the amount of time he spent in the hospital and the number of operations he was required to undergo, including the colostomy, support his claim for mental anguish. The trial judge's allocation of $15,000.00 to mental anguish does not constitute double recovery because such an award is separate and distinct from the award for physical pain and suffering. Trahan v. Perkins, supra.
[48] The trial judge was in the best position to evaluate the credibility of the witnesses who testified as to the extent of plaintiff's injuries and under the facts we cannot say the general damage award is excessive.
[49] The judgment appealed shall be reduced by 10% to reflect the percentage of negligence attributable to the plaintiff in causing his injury. In order to accomplish this reduction the second paragraph of the judgment of the district court is amended and recast to read:
[50] * * * * * *
[51] IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, in addition to the above, there be judgment herein in favor of plaintiff, SAMUEL HARRIS, and against defendant, STAFFORD PINESET, in the additional sum of Eighty-Three Thousand Three Hundred Fifty-Five and 43/100 ($83,355.43) Dollars, together with legal interest thereon from judicial demand, April 23, 1985, until paid.
[52] As amended, the judgment is AFFIRMED with costs on appeal to be paid by plaintiff.