505 So.2d 767 (1987)
William W. ROBINSON, Plaintiff-Appellant,
v.
William Joseph HARDY, Jr., Defendant-Appellee.
No. 18476-CA.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1987.
Rehearing Denied April 30, 1987.
Writ Denied July 1, 1987.
*768 Theus, Grisham, Davis & Leigh by Brian E. Crawford, Monroe, for plaintiff-appellant.
Blackwell, Chambliss, Hobbs & Henry by Sam O. Henry, III, West Monroe, for defendant-appellee.
*769 Before MARVIN, FRED W. JONES, Jr., SEXTON, NORRIS and LINDSAY, JJ.
SEXTON, Judge.
The plaintiff, Mr. William W. Robinson, appeals an adverse judgment in this suit against the defendant, Mr. William Joseph Hardy, Jr., to recover for injuries received on or about August 17, 1984, when the plaintiff was struck in the face by a blow delivered by the defendant. The defendant reconvened seeking compensation for physical injuries, mental stress, embarrassment and humiliation resulting from the incident. The trial judge rejected the demands of both parties.
We find the district court clearly wrong in rejecting plaintiff's demands. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978) on remand 370 So.2d 1262, writ denied 374 So.2d 660 (La.1979). Accordingly, we reverse and apportion fault at thirty (30%) percent to plaintiff Robinson and seventy (70%) percent to defendant Hardy.
The trial court heard the testimony of both parties, the wives of both parties, and other witnesses, including employees of the plaintiff and family members of the defendant. Although there are some discrepancies, the testimony reveals the following scenario.
On August 17, 1984, Hardy returned home to Monroe, Louisiana from Dallas, Texas in order to attend the college graduation of his fianceé and an announcement or engagement party at Monroe's Restaurant, owned and operated by Robinson. The defendant admitted that he had some alcoholic beverages to drink on the way home and apparently had arrived at such a state that he was uninhibited, if not intoxicated.
Upon his arrival in Monroe, he apparently went to his parents' home and changed clothes from his business suit to blue jeans and tennis shoes, which he wore to attend the graduation ceremonies at Northeast Louisiana University. However, Hardy did not remember returning home, changing clothes, or even attending the commencement exercises for his fianceé.
After leaving the graduation, Hardy returned a second time to his family's home. Hardy's mother picked him up shortly thereafter and they went to Monroe's Restaurant where an engagement dinner had been planned for Hardy and his fianceé. Hardy's wife, (then his fianceé) Catherine Dumesnil, and most of her family, as well as some of the members of the Hardy family, were already seated in the bar at Monroe's Restaurant awaiting the preparation of their dinner table. Hardy approached his fianceé who was seated at the bar next to a small service area of the bar usually reserved for bar waitresses to obtain condiments and drink accessories. The testimony indicates that Hardy became verbally abusive to his fianceé at that time.
Bryan Novak, the bartender, stated that Hardy ordered a coke but did not pay for it. After serving Hardy, the bartender testified that he asked Hardy to move aside so that waitresses could get to the service area which was right next to where Catherine Dumesnil Hardy was seated. Apparently, Hardy did not move aside.
Shortly thereafter, Mr. Robinson and his wife arrived at the restaurant. Mr. Robinson was advised by his assistant manager that there was "a drunk" in the bar. Robinson walked into the bartender's area to help wash glasses, whereupon he immediately noticed Hardy and overheard abusive comments to Miss Dumesnil. Upon the instructions of Mr. Robinson, Mr. Novak again asked Hardy to move aside from the service area. Hardy may not have heard the request, but if he did he either refused it or ignored it. Robinson testified that he then reached across the bar to Hardy who was still blocking the service area, placed his finger on Hardy's right shoulder and asked him to move as he was blocking access. Hardy looked at Robinson and firmly replied, "No." Robinson then immediately moved from the bar area of the restaurant, approached Hardy from the side or rear, placed his arms around Hardy's upper torso, lifted him from his feet and escorted him through a crowd of patrons out the side door.
*770 Daphanie Lynn Zagone worked as a waitress at Monroe's Restaurant on the night in question. She testified that the restaurant was very busy that night. She stated that she had asked Hardy to move so that she could get to the service bar. He moved about a foot away, but regained his former position in front of the service bar after Daphanie left. Daphanie further testified that she came back to the bar again to get drinks, but this time she did not ask Hardy to move. She stated that Hardy was loud and obnoxious. Furthermore, Daphanie testified that she heard Robinson tell Hardy from behind the bar, "You're out of here." She was unable to render any further details of the conversation between Robinson and Hardy. Finally, Daphanie testified that she saw Robinson come from behind the bar, grab Hardy, and "put him out the door."
Holly Lynn Van Tassel also worked as a waitress at Monroe's Restaurant on the night of the incident. She testified that the restaurant was crowded and busy. She stated that she heard Hardy use vulgar language to the girl sitting next to him. Holly testified that she never asked Hardy to move. However, she stated that she did hear the bartender ask Hardy to move. She testified that she also heard Mr. Robinson who was standing behind the bar tell Hardy, "You're out of here," and she saw Hardy looking right at him as Robinson said that. Holly testified that Mr. Robinson then came from behind the bar, picked Hardy up under his arms, and "pushed him out the door."
Lucille Renae Dumesnil, also known as "Lulu," is the sister of Catherine Dumesnil Hardy. Lulu testified that she walked up and stood within touching distance behind Catherine and Hardy who were sitting at the bar arguing. Lulu stated that the bar atmosphere was sort of noisy and crowded so she could not hear all of what was said. She testified that the argument was not loud, but she could see an exchange of argumentative words and the upset appearance of Catherine. Lulu stated that she could tell Hardy had been drinking even before she walked over to the bar stool where he was seated.
Lulu saw one waitress come to the service bar area and the bartender apparently tell Hardy to move. Shortly thereafter, Lulu observed but did not hear an exchange of words between the bartender and Hardy. She noted that the bartender was apparently angry as he slammed whatever was in his hand down on the counter with force. Then she saw the bartender leave. Lulu testified further that she was going over to the bar to get Hardy to move when the bartender came around from behind the bar, nudged her out of the way, grabbed Hardy, and forcibly threw him out of the restaurant.
It should be noted that Lulu's testimony indicated that Hardy was generally intoxicated and uncooperative. Also, she agreed that his appearance at the graduation ceremonies was inappropriate.
Krista Gay Hardy, Hardy's sister, testified that she was seated at the Monroe's Restaurant bar with Lulu and others in the party before Hardy arrived. She stated that Hardy arrived drunk, sat down by Catherine, and ordered a coke. When Catherine spoke to Hardy about his drunken state and inappropriate attire, Hardy got "up in her face getting on to her."
She testified that the bar was noisy and no one but the bartender could really hear them. Krista further testified that the bartender asked Hardy to move twice when the waitresses came over to the service bar area. She stated that Hardy would move over and then move back to his original position once the waitresses left. Krista also testified that she heard Mr. Robinson tell Hardy, "Sir, you are going to have to move." Krista stated that Hardy either did not hear Mr. Robinson or ignored him. Then, Krista heard Robinson tell Hardy he was going to "throw his ass out of here." Whereupon, he put his glass down on the bar and immediately came around the side of the bar and grabbed Hardy.
Catherine Dumesnil Hardy also testified that the bar was crowded. Catherine testified that she did not respond to Hardy's verbal attack but merely looked down and cried quietly. Catherine further testified *771 that she did not remember the bartender nor Mr. Robinson ever saying anything to her or the defendant. Moreover, Catherine testified that she did not remember ever seeing Mr. Robinson that night. Catherine testified that while Hardy created a "scene," he did not create a "disturbance." However, she stated that she had attempted to induce Hardy to go home prior to the incident.
Once outside, Hardy was either thrown by the plaintiff or fell when released by the plaintiff. Upon regaining his footing, Hardy struck Robinson in the face with his fist. Hardy remembers only one punch, however, the physical evidence reveals that Hardy struck Robinson at least twice, and perhaps three times, about the head. Nevertheless, it seems that it was the first blow delivered by Hardy which broke Robinson's jaw and caused all or most of the damage.
Robinson testified that he never took a swing at Hardy even after he was struck the first time. Moreover, while other unidentified parties attempted to hold Hardy and keep him from further attack, Hardy verbally cursed Robinson and challenged him to continue fighting. Robinson refused.
Robinson stated that once Hardy was released by those restraining him, Hardy approached Robinson offering a "handshake." Robinson refused the handshake and again advised Hardy that he was permanently barred from the restaurant. Hardy's response to this comment was to strike another blow to Robinson's head, thereby causing others to pull him off Robinson a second time.
Catherine's sister, Lulu, specifically contradicted Robinson's testimony subsequent to the handshake offer.
The trial court rendered judgment in favor of the defendant Hardy on the main demand. The court stated that no matter how justified Robinson may have felt in physically removing Hardy from the premises, nothing in the law or in the factual situation of this case justified Robinson's battery upon Hardy by physically removing Hardy from the premises. The court stated further that even if Hardy was obnoxious, had used foul words or even cursed Robinson, none of this justified Robinson's resort to physical violence.
The trial court determined that Robinson was the initial aggressor and Hardy could not be liable for resisting that aggression unless Robinson had retreated and Hardy had then become the aggressor. The trial court stated that the evidence indicated that Hardy had no knowledge that Robinson was the owner or operator of the bar. The trial court further determined that Hardy, immediately after regaining his footing outside, acted upon reflex and struck a retaliatory blow which resulted in Robinson's serious injuries in self-defense. Moreover, the trial court concluded that the force used by Mr. Hardy was no more excessive than the force that had been used against him.
Thus, the trial court rejected the demands of the plaintiff Robinson and likewise rejected Hardy's reconventional demand stating that it could not single out the event of Hardy's physical ejection from the bar as the sole cause of any mental stress, embarrassment and humiliation which Hardy might have suffered. Robinson only appealed and Hardy has not answered.
In essence, plaintiff's several assignments of error present the single issue on appeal of whether the trial court erred in denying damages to the plaintiff for injuries suffered as a result of the defendant's attack.
The law is well-settled that in actions for damages for battery a plaintiff cannot recover if the evidence establishes he was at fault in provoking the difficulty in which he is injured, unless the person retaliating uses excessive force to repel the aggression. Tripoli v. Gurry, 218 So.2d 563 (La.1969); Harris v. Pineset, 499 So.2d 499 (La.App. 2d Cir.1986), writs denied 502 So.2d 114, 117 (La.1987); Perkins v. Certa, 469 So.2d 359 (La.App. 2d Cir.1985); Bray v. Isbell, 458 So.2d 594 (La.App. 3d Cir. 1984), writ denied 462 So.2d 210 (La.1985). Liability for a battery depends upon the *772 facts and circumstances of each case. To establish provocation, the defendant must show some conduct or action by the plaintiff sufficient to provoke or arouse the defendant to the point of physical retaliation. Barras v. Touchet, 467 So.2d 172 (La.App. 3d Cir.1985); Johnson v. Dixon, 457 So.2d 79 (La.App. 2d Cir. 1984), writ denied 462 So.2d 196 (La. 1984); Dean v. Nunez, 423 So.2d 1299 (La.App. 4th Cir. 1982), writ denied 430 So.2d 76 (La.1983).
Louisiana's aggressor doctrine precludes tort recovery where the plaintiff acts in such a way so as to provoke a reasonable person to use physical force in fear or anticipation of further injury at the hand of the aggressor. Perkins v. Certa, supra.
LSA-R.S. 26:88(5) provides that a bar owner shall not permit any disturbance of peace or obscenity on licensed premises. When such occurs, the owner of the bar has not only a right but also a duty to remove the customer from the premises in a reasonable manner and with such force as is reasonably necessary. Thrasher v. Leggett, 373 So.2d 494 (La.1979). Thus, Robinson was obligated by law to maintain order in his restaurant-lounge and owed a duty to the other patrons to protect them from disruptive and obnoxious behavior.
The trial judge is in a better position to evaluate the credibility of witnesses and the weight of evidence than an appellate court who does not see or hear the witnesses. For this reason, a reviewing court should adopt the trial court's finding as its own in the absence of clear error, even if other conclusions from the same evidence are equally reasonable. Arceneaux v. Domingue, supra.
However, the uncontroverted facts in this case indicate that Mr. Hardy was very intoxicated, and as a result was oblivious to his surroundings in Monroe's Restaurant. While it is uncertain how loud he was, he was definitely argumentative and profane. The trial judge specifically found him "admittedly obnoxious." He was asked to move several times by various people but to little or no avail. Mr. Robinson, the owner of the bar, was the last person to ask Hardy to move. Hardy looked right at Robinson and responded specifically in the negative. Without further hesitation, Robinson came around from behind the bar, grabbed Hardy around the torso, and either picked him up slightly or walked him out of the restaurant. The defendant was immobilized during the process.
Hardy continually asserted a lack of awareness as to who had grabbed him or why. Clearly, his intoxication precluded his awareness of the disturbance he was creating, the legitimate requests of the employees and owner of the establishment, and the knowledge of who was ejecting himas well as the reason therefor. The fact of Hardy's intoxication does not excuse his oblivion to the situation.
The manner in which Robinson removed Hardy was not of sufficient force to justify Hardy's retaliation. Robinson did not physically injure Hardy nor any other customers when he wrapped his arms around Hardy's torso and escorted him out of the restaurant.
After being released outside, the defendant regained his footing and struck the plaintiff. The defendant continued to be combative and unrepentant after the event. Due to his intoxication it is difficult to credit the defendant's testimony that he feared Robinson was going to kick him if he continued to lay in the flowerbed where he claims he landed after Robinson released him.
We therefore conclude that Hardy's punch was not justifiable under the circumstances. A reasonable man who was aware of his surroundings would not have feared that Robinson would kick him. A reasonable man would not have found it necessary to regain his footing and take a swing at Robinson.
Thus, we conclude that the record fails to indicate conduct or actions by Robinson sufficient to provoke and arouse a reasonable person to the point of physical retaliation and the findings to the contrary are clearly wrong.
In determining damages under circumstances of this type, we have traditionally *773 recognized that there is certain conduct which, while not justifying the battery complained of, may be of such a nature under the circumstances as to so provoke or contribute to the incident that plaintiff's damages should be mitigated. Walpole v. Weathersby, 465 So.2d 950 (La.App. 2d Cir. 1985); Downey v. Clark, 426 So.2d 331 (La.App. 2d Cir.1983).
However, this court recently took a different approach in Harris v. Pineset, supra, determining that the principles of comparative fault within the context of LSA-C.C. Art. 2323, while perhaps yielding the same result, are better suited to a resolution of such circumstances. Thus, in a somewhat similar situation, the Harris court approved the use of the comparative fault guidelines established by the Supreme Court in Watson v. State Farm Fire and Casualty Company, 469 So.2d 967 (La.1985), to determine whether damages should be reduced in situations such as here presented. The Watson court quoted with approval the following statement in the Uniform Comparative Fault Act.
In determining the percentage of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the casual relation between the conduct and the damages claimed.
Watson, supra, at page 974.
The factors which the Watson court assigned as among those to be considered in apportioning the degree of fault were established as:
1. Whether the conduct resulted from inadvertence or involved in an awareness of the danger;
2. How great a risk was created by the conduct;
3. The significance of what was sought by the conduct;
4. The capacities of the actor, whether superior or inferior; and
5. Any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
Watson, supra, at page 974.
We agree with Harris v. Pineset that the principles of LSA-C.C. Art. 2323 under the broad interpretation currently furnished that article by the Louisiana Supreme Court are a more appropriate approach than the previous concept of mitigation.[*]
Applying the Watson principles to the instant case in an effort to determine whether plaintiff's damages should be reduced by a degree of comparative fault, we note Robinson's statutory duty to prohibit a disturbance on his premises. However, he did not warn Hardy that if Hardy did not quiet down, it would be necessary that he leave. Moreover, he did not seek the assistance of any of the sizeable party with whom Hardy was obviously associated. We also believe that Robinson knew or *774 should have known that Hardy was significantly intoxicated and that a degree of care was required in order to prevent a magnification of the circumstances. While we cannot specifically say that Robinson should have summoned the police, since their arrival would surely have been unsettling to his patrons, it seems that other less forcible courses were available. It is clear that the plaintiff was very angry and acted abruptly. On the other hand, plaintiff's extreme intoxication was the initiating factor. Absent that intoxication, plaintiff's disruptive behavior and oblivion would probably not have occurred.
Considering the Watson factors and the circumstances of the case as herein outlined, we assess the fault of the plaintiff at thirty (30%) percent and that of the defendant at seventy (70%) percent with respect to the injuries suffered by the plaintiff. It therefore becomes our concluding task to assess the level of damages suffered by the plaintiff Robinson and to reduce these damages by the degree of fault which we have assigned to him.
Pursuant to LSA-C.C.P. Art. 2164, the Courts of Appeal are empowered to award damages in cases where the trier of fact initially rejects the plaintiff's demands and the record is complete with regard to damages. Dupree v. Louisiana Transit Management, 441 So.2d 436 (La.App. 2d Cir.1983); Burnell v. Sportran Transit System Company, 421 So.2d 1199 (La.App. 2d Cir.1982).
Appellant incurred medical expenses of $1,119.00 for services rendered as a result of the surgery to repair his broken jaw and $1,085.00 for hospitalization charges at St. Francis' Hospital. He also incurred dental expenses in the amount of $95.00. The evidence further indicates he will require dental work in the future in the sum of $375.00. Thus, appellant's special damages total $2,674.00.
As a result of the altercation, Robinson suffered severe bruises and contusions about the face and head, non-displaced fracture of the left mandibular angle of the mandible, and a fractured tooth. Robinson entered the hospital at about 11:00 p.m. Saturday night, the night he received his injuries, and he underwent surgery for his broken jaw the next morning. According to Robinson, he suffered an extremely painful reaction to the anesthetic. During surgery, he had his upper and lower teeth wired with stainless steel, which prevented him from opening his mouth. His mouth remained wired shut for about four weeks. During those four weeks, he was forced to consume his meals through a straw.
Robinson indicated that since his surgery he has experienced a good recovery from his jaw injury, though he will need some additional dental work for his fractured tooth. The evidence preponderates that as a result of his injuries, appellant suffered several weeks of pain, discomfort, inconvenience, and an interruption of a normal diet.
Accordingly, we find that $7,500.00 will adequately compensate appellant for his pain and suffering.
For the foregoing reasons, the judgment of the lower court is reversed and judgment will be rendered in favor of plaintiff-appellant, Robinson, and against defendant-appellee, Hardy, in the amount of damages sustained less the degree of fault attributed to the plaintiff.

DECREE
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the plaintiff, William W. Robinson, and against the defendant, William Joseph Hardy, Jr., for general damages in the sum of $5,250.00, and for special damages in the sum of $1,871.80, together with legal interest thereon from judicial demand, and for all costs of these proceedings.
REVERSED and RENDERED.
NORRIS, J., dissents and assigns reasons.
FRED W. JONES, Jr., J., dissents for reasons to be assigned by NORRIS, J.
NORRIS, Judge, dissenting.
I respectfully dissent.
The resolution of this case depends on the facts. The able trial judge, after hearing *775 the evidence, observing the witnesses and assessing their credibility, determined the factual scenario in well written "Reasons for Judgment." He concluded that defendant Hardy, who had been drinking earlier in the day, had been in plaintiff's establishment for only a few minutes when the incident occurred, was having a private argument with his fianceé, and that his words and actions, while upsetting to his fianceé and irritating to plaintiff, were not threatening and did not rise to the level of a disturbance that justified plaintiff grabbing him from behind, without warning, and forcibly ejecting him from the bar. The trial court further found that after being forcibly ejected and thrown to the ground by plaintiff, defendant immediately regained his footing and struck his unknown assailant with a reflex blow. From these facts, the trial court concluded that plaintiff was the aggressor and that defendant's retaliatory action was a reflex, in self defense and not excessive. There is abundant evidence in this record to justify the trial court's factual conclusions; they are not manifestly erroneous and should not be reversed by a reviewing court even if other conclusions from the same evidence are equally reasonable. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Louisiana's aggressor doctrine precludes tort recovery where the plaintiff acts in such a way to provoke a reasonable person to use physical force in fear or anticipation of further injury at the hand of the aggressor plaintiff. Tripoli v. Gurry, 253 La. 473, 218 So.2d 563 (1969); Perkins v. Certa, 469 So.2d 359 (La.App. 2d Cir.1985). A plaintiff is said to be the aggressor when he is at fault in provoking the altercation in which he was injured. West v. Jones, 411 So.2d 532 (La.App. 1st Cir.1982). Mere words, no matter how calculatedly they were used to excite or irritate, cannot justify a battery. Morneau v. American Oil Co., 272 So.2d 313 (La.1973). The question of which party is the aggressor must be decided on the peculiar facts and circumstances of each situation. Perkins v. Certa, supra.
Here, under the particular facts and circumstances of this case, the trial judge found that plaintiff was the aggressor and that defendant's use of physical force was reasonable because of his fear or anticipation of further injury.
The majority opinion, as I appreciate it, really turns on what I consider to be an erroneous and dangerous interpretation of LSA-R.S. 26:88 (5) which would allow a bar owner to forcibly eject, without warning or attempting to utilize more reasonable means, any patron he believes is causing or about to cause a disturbance. The trial judge felt, and I agree, that an owner's resort to physical violence should be taken only in emergency situations where it is apparent that no other alternative is available. To hold otherwise is to grant a judicial license to bar owners to batter customers who begin to irritate the owners after consuming too much of the owner's merchandise. However, 26:88 (5) is really not the issue in the instant situation because the trial judge expressly found that defendant's conduct did not rise to the level of a disturbance that required any immediate action by plaintiff.
I would affirm the judgment of the trial court for the reasons expressed by the trial judge.
NOTES
[*] LSA-C.C. Art. 2323 reads as follows:

Art. 2323. When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
Note that this article simply states that damages are to be reduced by the percentage of negligence attributable to the injured party. The word "fault" is not mentioned. However, in the application of this article to Louisiana tort doctrine, the Louisiana Supreme Court in Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985), and Turner v. New Orleans Public Service, Inc., 471 So.2d 709 (La.1985), 475 So.2d 765 (La. 1985), has clearly enunciated a broad interpretation of this article, thus fashioning from the article a concept of comparative fault.
The court has thus accepted Professor Robertson's view that the article should be broadly interpreted to apply the simple concept of comparative fault wherever possible, rather than continue the sometimes tortured analyses and legal fictions which the excesses of contributory negligence have visited upon us. See Robertson, Ruminations on Comparative Fault, Duty-Risk Analysis, Affirmative Defenses, and Defensive Doctrines in Negligence and Strict Liability Litigation in Louisiana, 44 La.L.Rev. 1341 (1984). The court has therefore rejected Professor Johnson's view that the legislature only intended a strict application of comparative negligence to contributory negligence situations in light of the existing duty/risk concept. See Johnson, Comparative Negligence and the Duty-Risk Analysis, 40 La.L.Rev. 319 (1980).