513 So.2d 537 (1987)
Emily Sue Green HIGGINBOTHAM, Plaintiff-Appellant,
v.
OUACHITA PARISH POLICE JURY & Employers Fire Insurance Company, Defendants-Appellees.
No. 19,013-CA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1987.
*538 Bruscato, Loomis, Street & Anzelmo by C. Daniel Street, Monroe, for plaintiff-appellant.
Theus, Grisham, Davis & Leigh by Thomas G. Zentner, Jr., Monroe, for defendants-appellees.
Before SEXTON, NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
The plaintiff, Emily Sue Green Higginbotham, appeals the decision of the trial court awarding her $30,775.40 in damages against the defendants, Ouachita Parish Police Jury and its insurer, Employers Fire Insurance Company. Liability was admitted by the defendants in the trial court. In this appeal, the plaintiff claims the trial court award was so low as to constitute an abuse of discretion. For the following reasons, we affirm.

FACTS
On July 30, 1983, while driving an antique 1940 Ford coupe, the plaintiff attempted to drive over a cattle gap located on a parish road in Ouachita Parish. Several of the bars on the cattle gap collapsed and the front of the vehicle struck the edge of the hole covered by the cattle gap. Plaintiff was thrown into the steering wheel and was then thrown backward in a whiplash action.
Plaintiff's face struck the steering wheel. She was also cut by glass from the car's windshield and dash which broke upon impact. The plaintiff suffered a cut on her neck requiring two stitches. In addition, several of the plaintiff's front teeth were injured and subsequently died. This necessitated extensive dental work, including root canals on three teeth, and crowns on four teeth. The plaintiff also suffered whiplash-type soft tissue injuries and was diagnosed as having fibromyalgia, a condition causing muscle "knotting" and spasms in the plaintiff's neck and back. Plaintiff's muscle tension results in severe migraine type headaches which sometimes include nausea. The plaintiff claims her condition is made worse by overexertion. As a result, she claims the activities she can perform as a licensed practical nurse are limited and her ability to work overtime has been curtailed. The plaintiff also contended that she could no longer take long car trips and that she ceased playing in neighborhood baseball games.
On July 26, 1984, the plaintiff filed suit against the defendants claiming $41,000 in medical expenses, $300,000 in lost future wages, and $300,000 in general damages. The case was tried June 6, 1986. Because liability was stipulated on the part of the Ouachita Parish Police Jury, the only issue at trial was the quantum due the plaintiff.
The accident resulted in various cuts and bruises, all of which resolved themselves within a short period of time and produced no disability. Plaintiff's major injuries consisted of a noticeable scar left by the cut on her neck, the pain and suffering surrounding *539 her extensive dental treatment and her condition of fibromyalgia. Plaintiff is able to work full time as a licensed practical nurse, but she claimed loss of wages due primarily to her inability to work overtime and to work double shifts.
Following the trial, the case was taken under advisement. In written reasons for judgment, the trial court reviewed the medical testimony presented by the plaintiff relative to her injuries, including the treatment received for her cuts and bruises, her dental treatment and her fibromyalgia. With respect to plaintiff's condition of fibromyalgia, the court determined that the condition had improved and it was uncertain whether the condition would continue to restrict the plaintiff's activities. The court made an award for lost wages based upon lost overtime prior to trial. As to lost future wages, the trial court awarded the plaintiff an amount equivalent to that which she could have earned for overtime for an additional one year period. As to future medical expenses, the court also used a period of one year to fix the amount to be awarded.
Pursuant to his written reasons, the trial court rendered judgment on December 11, 1985, awarding the plaintiff $30,775.40, plus costs. This amount includes $22,000 in general damages, $1,287 in lost past wages, $3,042 in lost future earnings and earning capacity, $1,176.60 in future medical expenses and $3,269.80 in past medical and drug expenses.
The plaintiff has appealed the trial court decision, claiming the court abused its discretion in awarding only $22,000 in general damages and erred by awarding inadequate amounts for lost future wages and future medical expenses.

GENERAL DAMAGES
The plaintiff complains the trial court erred in awarding only $22,000 in general damages. She claims she suffered several severe injuries. One of her primary contentions relates to the condition of fibromyalgia. She contends that this condition, coupled with her other injuries, warrants a higher general damage award than the $22,000 awarded by the trial court. We find the plaintiff's argument to be meritless.
Before a trial court award for damages can be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. A damage award should not be disturbed by a reviewing court absent a showing of a clear abuse of the discretion vested in the trial court. Perniciaro v. Brinch, 384 So.2d 392 (La.1980); Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Harris v. Pineset, 499 So.2d 499 (La.App. 2d Cir.1986), writs denied 502 So.2d 114, 117 (La.1987); Burnham v. Frey-Shoemaker-Colbert-Brodnax, 445 So.2d 477 (La.App. 2d Cir.1984); Hardie v. Pylant, 375 So.2d 189 (La.App. 2d Cir.1979); Gibson v. Winn Dixie Louisiana, Inc., 426 So.2d 731 (La.App. 3rd Cir.1983).
It is only after an articulated analysis of the facts discloses an abuse of discretion that resort to prior awards in similar cases is proper. Reck v. Stevens, supra, Coco v. Winston Industries, Inc., supra.
The appropriate procedure for testing whether the trier of fact has abused its discretion by making an excessive award is to determine whether the award can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the fact finder. The converse of this rule is also true. In determining whether the trier of fact abused its discretion in making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. Cutchall v. Great American Pump Company, 460 So.2d 1106 (La.App. 2d Cir.1984); Lindsay v. Toys, 499 So.2d 462 (La.App. 2d Cir.1986). Therefore, because the inquiry is whether the trial court's award for general damages was inadequate, we must examine the facts contained in this record in the light most favorable to the defendant to determine whether the trial court abused its discretion.
*540 As stated heretofore, the record reveals the plaintiff sustained several injuries as a result of this accident. Upon impact, broken glass caused a cut on plaintiff's neck which required two stitches to close. As a result, plaintiff was left with a permanent scar one-half inch long and one-quarter inch wide which is visible unless the plaintiff wears clothing with a high neckline. The plaintiff also sustained damage to her front teeth which necessitated root canals in those teeth, and the emplacement of crowns on four of her teeth.
The plaintiff also suffered whiplash-type injuries. She testified that she suffered muscle pains and spasms in her neck, shoulder and back which resulted in migraine headaches. The plaintiff testified she sought treatment from her family doctor, then a chiropractor and other physicians. She eventually sought treatment from a rheumatologist who prescribed medication for these symptoms.
The deposition of the rheumatologist, Dr. John Hull, was introduced into evidence at trial. Dr. Hull diagnosed the plaintiff as having a condition known as post traumatic fibromyalgia, a condition which causes stiffness, fatigability, poor sleeping patterns and tender and sore muscles in the plaintiff's neck and back. Dr. Hull said the plaintiff would probably be on and off medication for this condition for the remainder of her life. He also testified that stress and overwork tends to cause flare-ups in the condition. However, Dr. Hull stated that plaintiff's condition had improved and that her medication is not as strong as that prescribed for her when she initially consulted him. Dr. Hull did not advise plaintiff that she could not work, nor did he tell her that she was unable to work overtime. He simply advised her not to work too many consecutive eight hour shifts ("doubles") in her nursing position. He also felt that a nurse would not be as hampered by this condition as would someone, such as a secretary, who must occupy a stationary position for long periods of time. Dr. Hull also testified that the degree of difficulty experienced by a person with this condition and the amount of medication necessary in the future could not be predicted.
The plaintiff testified that her condition has limited her activities, both professionally and personally. The plaintiff is employed as a licensed practical nurse, and she testified that, due to her condition, she cannot lift or bathe patients nor can she make beds. As a consequence, she worked the graveyard shift when most patients are sleeping and fewer tasks are required of the nurse. Plaintiff also testified that she cannot work overtime because the overexertion results in flare-ups of the fibromyalgia. Plaintiff also testified that because of her condition, she no longer takes long car trips nor does she participate in neighborhood ballgames.
At trial, the defendants pointed out that the plaintiff experienced debilitating migraine headaches for some time prior to the accident.
Plaintiff had apparently suffered from severe tension headaches for several years prior to the accident and had received treatment for the condition and prescriptions for medication. She testified, however, that the condition had not troubled her for two or three years prior to the accident. Nevertheless, Dr. Camille Carter, one of plaintiff's treating physicians, testified that the headaches about which plaintiff complained following the accident were apparently a continuation of the problems she suffered before. Dr. Hull, who felt that the fibromyalgia was contributing to plaintiff's headaches, had not been advised by plaintiff of her history of headaches.
Considering the foregoing legal principles, and after a careful review of the record, including the opinions of the physicians, we conclude that the evidence supports the award of the trial court of $22,000 in general damages. Based upon the facts contained in the record, viewed in the light most favorable to the defendant, such an award does not constitute an abuse of discretion by the trial court.

LOST FUTURE INCOME AND EARNING CAPACITY
The plaintiff also complained that the trial court erred in the low award made *541 for lost future wages and erred in failing to make any award for lost earning capacity. We find no abuse of discretion in the trial court's award.
In many instances, lost earning capacity and lost future earnings are different elements of damages. Earning capacity is not necessarily determined by actual loss; damages may be assessed for what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. Coco v. Winston Industries, Inc., supra; Folse v. Fakouri, 371 So.2d 1120 (La.1979); Green v. Farmers Insurance Company, 412 So.2d 1136 (La.App. 2nd Cir.1982). Such damages are calculated on the person's ability to earn money rather than on what he actually earned before the injury. Hill v. Sills, 404 So.2d 1323 (La.App. 2d Cir.1981); Cushman v. Fireman's Fund Insurance Company, 401 So.2d 477 (La.App. 2d Cir.1981). The theory is that the injury has deprived the plaintiff of a capacity he would have been entitled to enjoy even though he may never have profited from it. Harris v. Pineset, supra.
Awards for lost future income are inherently speculative and are intrinsically insusceptible of being calculated with mathematical certainty. The courts must exercise sound judicial discretion in determining these awards and render awards which are consistent with the record and which do not work a hardship upon either party. Morgan v. Willis-Knighton Medical Center, 456 So.2d 650 (La.App. 2d Cir.1984); Harris v. Pineset, supra.
Factors to be considered in determining a proper award for lost future income are the plaintiff's physical condition before injury, the plaintiff's past work history and consistency thereof, the amount the plaintiff probably would have earned absent the injury complained of, and the probability that the plaintiff would have continued to earn wages over the remainder of his working life. Morgan v. Willis-Knighton Medical Center, supra; Cutchall v. Great American Pump Company, supra.
However, it is the plaintiff's burden of proving that his disability will cause him to suffer a lack of income. Winterrowd v. Travelers Indemnity Company, 452 So.2d 269 (La.App. 2d Cir.1984), writ granted, 457 So.2d 1185 (La.1984), writ denied 457 So.2d 1195 (La.1984), affirmed 462 So.2d 639 (La.1985); Cutchall v. Great American Pump Company, supra.
In computing loss of future income, it is first necessary to determine whether and for how long a plaintiff's disability will prevent him from engaging in work of the same or similar kind that he was doing at the time of his injury; it is necessary to ascertain whether he has been disabled from work for which he is fitted by training and experience. Morgan v. Willis-Knighton Medical Center, supra.
In the present case, lost future earning capacity and lost future wages are synonymous. The plaintiff has maintained full-time employment and her only loss relates to a limitation of her overtime hours. The plaintiff has demonstrated no lost earning capacity other than loss of future overtime wages. The trial court did not err in making an award only for lost future wages.
Further, the trial court did not abuse its discretion in the amount of the award. As stated above, the plaintiff has the burden of proving that the disability will cause a loss of income, as well as the duration of that loss.
The plaintiff has only recently completed training as a licensed practical nurse and become employed in that profession. The plaintiff testified that she had worked overtime, but that since her injury she no longer did so. The plaintiff also presented the amount she earned for overtime, and showed the amount of such overtime work that was available to her. However, as noted by the trial court, the plaintiff did not demonstrate that her condition would permanently prevent her from working extra hours and receiving additional compensation therefor. We also note that plaintiff's physician did not advise her to totally refrain from overtime work, but rather advised that she refrain from working numerous consecutive eight-hour shifts.
*542 The trial court was satisfied that plaintiff's physical condition was improving. Dr. Hull felt that this was the case. Plaintiff last saw Dr. Hull in January of 1986 and the trial was held in June of 1986. Considering plaintiff's history and her continued progress, we believe that the trial court did not commit clear error in awarding plaintiff lost future overtime wages for a period of one additional year.
This assignment of error has no merit.

FUTURE MEDICAL EXPENSES
The trial court based its award for future medical expenses upon plaintiff's past drug bills and awarded a similar sum for one additional year.
The plaintiff asserts that the trial court abused its discretion in its award of future medical expenses for only one year. In addition, the plaintiff claims the trial court erred in basing the award for future medical expenses soley upon the cost of medication, without making any allowance for future doctor's visits. We find the plaintiff's argument to be meritless.
Future medical expenses should not be denied because it is impossible to establish the nature and extent of the treatment that will be required or the exact cost of it. Wilson v. Wal-Mart Stores, Inc., 448 So.2d 829 (La.App. 2d Cir.1984); Cushman v. Fireman's Fund Insurance Company, supra.
In the present case, the trial court did not deny the plaintiff future medical expenses. According to her treating physician, the plaintiff's condition is much improved. The plaintiff had not been to her doctor for several months prior to trial. In light of the plaintiff's improved condition, the trial court did not abuse its discretion in awarding future medical expenses for one year.

CONCLUSION
For the reasons stated above, we affirm the trial court's judgment awarding the plaintiff, Emily Sue Green Higginbotham, damages in the amount of $30,775.40.
AFFIRMED.