550 So.2d 909 (1989)
Grover Donald SILLS, Plaintiff-Appellee,
v.
MID-SOUTH SPORTS, INC., et al., Defendants-Appellants.
No. 20850-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1989.
Writ Denied December 1, 1989.
*910 Henry H. Lemoine, Jr., Pineville, for defendant-appellant, James E. Duggan, II.
Bruscato, Loomis & Street by Anthony J. Bruscato, Monroe, for plaintiff-appellee.
Before MARVIN, NORRIS and LINDSAY, JJ.
MARVIN, Judge.
"Hacksaw" Duggan, a professional wrestler who makes his living "entertaining fans," appeals a judgment against him awarding $25,432 in damages to a fan whose eye socket was fractured when Duggan intentionally struck the fan one or more times with his fist.
Duggan contends that the trial court should have found that the fan was the aggressor or in any event that provocation by the fan and the fan's young brother-in-law should mitigate the amount of damages.
The issues are factual. Not finding clear error, we affirm. Tripoli v. Gurry, 253 La. 473, 218 So.2d 563 (1969); Harris v. Pineset, 499 So.2d 499 (La.App. 2d Cir. 1986), writs denied.

FACTS
Defendant Duggan is a 30-year-old, 6' 3" 270-pound athlete who had been a professional wrestler for three years after a football career (a varsity lineman for four years at SMU and then for two years for the Atlanta Falcons in the NFL). He continues to physically exercise to keep his body in shape and can bench press 330 or more pounds.
Hacksaw is a member of a troupe of wrestlers that tour wrestling arenas in various cities to "perform" and "entertain" fans. He is frequently "cast" as a "bad guy," whose role it is to demonstrate "dirty and unfair tactics" purposely designed to "stir up" and rile the fans. This feature, the "good guys" against the bad, continually attracts fans to pay admission, hoping to see the "bad guys" get their due.
Like other wrestlers on the card, Hacksaw is remunerated by a share of the "gate," or paid admission. The Monroe Civic Center requires the promoters of wrestling matches to hire off-duty uniformed policemen to escort the wrestlers to and from the ring and provide them protection from the fans whom the bad guys have intentionally incited and made unruly. Such policemen were present when the incident which provoked this action occurred in the arena in Monroe.
In the last match of the evening, a tag-team match, Hacksaw and his teammate performed their roles as "bad guys," physically "whipping," however unfairly, their opponents who were performing as "good guys." As intended, the fans at the conclusion of the "match" were on their feet, incensed at the result. The fans booed and hissed, shouted expletives, and threw ice, paper cups, and other available things at the bad guys and into the ring.
Among the crowd were Donald Sills, his wife, and her 17-year-old brother, Victor Caldwell, who was about 6' 1" and 135 pounds. Sills, who describes himself as a "little short fat boy," is a 5'9" and 240-pound 40-year-old wrestling fan who is not an athlete. Sills was not seated next to the aisle in which Hacksaw and his teammate were each being escorted to the dressing room by a policeman, but was four or five seats away from the aisle.
A rolled-up cup of ice, thrown by a fan in the vicinity of Sills, hit Hacksaw in the face or head as he was being escorted down the aisle. Believing that young Caldwell threw the cup of ice, Hacksaw pointed at Caldwell, exclaiming "there the little SOB is." *911 Hacksaw moved chairs and advanced toward Caldwell and Sills from several feet away. Young Caldwell was pushed backwards, whereupon Sills, who even Hacksaw said, assumed a "defensive posture" with his arms raised. The trial court found that Sills, with his arms near his body, raised his hands with his palms straight out near his head and stated "Don't hit the kid!!!" Hacksaw then struck Sills with his fist, fracturing the orbital floor of Sills' eye socket and knocking Sills to the floor. The trial court correctly summarized the conflicting testimony:
Sills testified that Hacksaw came out of the arena and started down the aisle towards the dressing room. When he was approximately eight (8) or ten (10) feet from the position of [Sills] ... Hacksaw pointed towards Victor Caldwell and said "there the little SOB is." Hacksaw then came down the aisle toward Victor who was pushed backwards or knocked down. Sills held his hands up palms straight out close to his body and stated "don't hit the kid!" Sills admitted that he might have touched Hacksaw when he raised his hands up. In a matter of seconds, Hacksaw struck Sills twice on the right side of his head and face on the cheekbone below the eye....
Hacksaw testified that when he exited the ring the police officer followed him. As he was going down the aisle [toward the dressing room] he was struck in the face by a large cup of ice, rolled up tightly [that was] thrown by a young man. He moved down the aisle which brought him closer to the boy. When he was about ... 2 ½ feet [away] he pointed at [the boy] and stated, "that's him the SOB ..." He then testified that Sills, who was to his left, came across and hit him across the face, but he did not know whether Sills' hands were open or closed. He stated that Sills assumed a defensive posture in that his hands were up around his shoulder level and that he punched Sills hard enough to put distance between himself and Sills. Duggan admitted that Sills did not make any effort to hit him again and that his punch "dropped" Sills, who grabbed Duggan by the leg as he went down. Although he denied kicking Sills, Hacksaw stated that he broke Sills' hold on his leg by using a football maneuver.
A witness (Grice), who was in the aisle seat, testified that after Hacksaw stated "let me get to that SOB," and pushed away the chairs in front of him, he passed Grice, putting his hand on Grice's shoulder and spinning him around. Hacksaw then pushed Caldwell and turned to his left and hit Sills in the face and head.
The trial court concluded that, although the evidence was unclear as to whether Sills actually initiated contact with Duggan, Duggan "suffered absolutely no injuries of importance." The court further found
that the instigating factor of the altercation was Hacksaw being struck in the face by a cup of ice thrown by Caldwell as Hacksaw came down the aisle,[1]
that, regardless of Caldwell's actions, Hacksaw should not have pushed chairs aside to physically encounter Caldwell,
that Duggan had physically threatened Sills' brother-in-law, and
that Sills acted reasonably to stop the fight and protect Caldwell.
In finding Hacksaw legally responsible for the damage Sills sustained, the trial court found that Sills' conduct did not justify Hacksaw's battery upon him, noting that Louisiana frowns on self-help remedies and that Hacksaw had other and more reasonable alternatives available, including the nearby Monroe police officers.
The trial court additionally concluded:
Moreover, the altercation herein complained of would have been avoided altogether if Hacksaw and Borne had proceeded straight down the aisle towards the dressing room. Thus, the court has determined that Hacksaw provoked the *912 altercation by moving in a hostile manner in the direction of the boy. Even if Hacksaw believed in his own mind that he was defending himself, he used far excessive force than was necessary against Sills under the circumstances. Emphasis added.
The court further observed that inasmuch as the wrestlers' income, as independent contractors, was derived at least in part from a percentage of the gate, the wrestlers had a duty to protect wrestling fans from harm and not to intentionally harm them.
We summarize the trial court's findings:
1. Hacksaw (and not Sills) provoked the altercation by moving in a hostile manner toward Caldwell; and
2. Even if Hacksaw subjectively believed that he was defending himself, he used "far excessive force than was necessary" under the circumstances.
We find no error in these findings.

LAW
To recover for a battery, a plaintiff must prove by a preponderance of the evidence that his damages resulted from an unprovoked attack by another. Tripoli v. Gurry, supra; Harris v. Pineset, supra. A plaintiff whose conduct provokes another to use physical force in fear or anticipation of future injury at the hand of the aggressor may not recover damages for the battery. Robinson v. Hardy, 505 So.2d 767 (La.App. 2d Cir.1987), writ denied.
A defendant who claims provocation as justification for a battery must prove some conduct or action by the plaintiff sufficient to provoke and arouse a reasonable person to the point of physical retaliation. Thigpen v. Stern, 503 So.2d 1050 (La.App. 2d Cir.1987), writ denied; Robinson v. Hardy, supra.
Liability for a battery depends upon the facts and circumstances of each case. The whole of the evidence determines who was the aggressor and whether more force than necessary was used to repel the aggression. Tripoli v. Gurry, supra.

PROVOCATION
The evidence conflicted as to who was the actual aggressor. Sills testified that he raised his hands with palms out and open at shoulder level close to his chest in an attempt to induce Hacksaw not to hit his brother-in-law and denied that he struck Hacksaw, but he admitted that he "could have touched" Hacksaw as he raised his hands. Sills' version of the incident is supported by the testimony of other witnesses, including Grice. The witnesses did not see Sills physically contact Hacksaw but saw Hacksaw hit Sills in the face and head.
A reviewing court should adopt the trial court's findings in the absence of clear error, even if other conclusions from the same evidence are equally reasonable. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Robinson v. Hardy, supra; Harris v. Pineset, supra.
The preponderance of the evidence in this record supports the trial court's conclusion that Hacksaw was not provoked by Sills.

EXCESSIVE FORCE
Even where a battery may be legally "justified," the justification allows only such force as is reasonably necessary to overcome the provocation or aggression. If force in excess of what is deemed reasonably necessary is used, the offender is liable for damages for injury caused by such unnecessary force. Tripoli v. Gurry; Harris v. Pineset; Robinson v. Hardy, supra.
When and how the comparative fault should be assessed is a factual issue for the trier of fact. Robinson v. Hardy, supra.
Hacksaw testified that even though he was not sure if Sills was going to hit him again, he "wasn't going to give [Sills] the opportunity" so he punched him with a closed fist in the face with the stated intention of "put[ting] distance between [him]self and Sills." Hacksaw said that it "didn't matter" to him whether he hurt Sills. Hacksaw admitted, however, that he "threw enough power to defend himself," *913 saying "I think I dropped him right away." Medical experts said that it takes a strong and forceful blow to the face to cause an orbital floor fracture. Sills, Grice and other witnesses said that Sills was rendered unconscious or semi-conscious for several minutes after Hacksaw hit him.
The trial court correctly concluded that Hacksaw used excessive force under the circumstances, even if it be assumed that Sills provoked Hacksaw.
Having concluded the trial court's findings of fact are not clearly wrong, we have no fault of Sills to compare with that of Hacksaw.

DECREE
At Duggan's cost, we affirm the judgment of the trial court.
NOTES
[1] Hacksaw was the only witness who testified that Caldwell threw a cup of ice at him. Caldwell denied throwing any object at Hacksaw. Hacksaw did not speak to the police after the ice was thrown but moved through the chairs and crowd directly toward Caldwell.