337 So.2d 575 (1976)
Priscilla Joy Everhart Bourgeois, wife of/and Albert John BOURGEOIS, III
v.
Dr. Julius DAVIS, Jr., et al.
No. 7470.
Court of Appeal of Louisiana, Fourth Circuit.
August 31, 1976.
Rehearing Denied October 13, 1976.
*576 David Gertler, Joseph M. Singerman, New Orleans, for plaintiffs-appellants.
H. Martin Hunley, Jr., John M. Sartin, Jr., Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, for defendants-appellants.
Before REDMANN, LEMMON and BOUTALL, JJ.
REDMANN, Judge.
On defendants' appeal we reverse an award of $7,500 plus special damages for an abdominal scar from indispensable surgery to save plaintiff wife's life after a complication of non-negligent vaginal hysterectomy.
Plaintiffs picture their case as one of a woman who had a medical concern (permanent contraception) but whose paramount concern was scarlessness of the belly.
One could believe and understand that such a woman would reject ordinary tubal ligation because of its small scarsand would also reject a vaginal hysterectomy (or any other intra-vaginal surgery) if informed of the remote possibility that complications might require correction by abdominal incision. If such a woman advises her surgeon that she elects vaginal hysterectomy over ligation purely to avoid ordinary ligation's minimal scarring, then the surgeon in all fairness would be obliged to advise her of the remote possibility that complications of vaginal hysterectomy might require remedy by abdominal incision. A patient so concerned for scarlessness might indeed choose non-surgical (and non-permanent) contraception over the possibility, even remote, of a scar from surgical contraception. The surgeon who denies such a patient such a choice breaches an obligation to that patient and if his breach causes her damage he is liable to her for that damage.[1]
But our case is far, far different. At the outset, our patient did not choose hysterectomy over tubal ligation to avoid scars because she did not know until "today," at the time of trial, that ordinary ligation entailed scars. She, therefore, cannot possibly be a patient who told her doctor that she preferred, in order to avoid scars of ligation, a vaginal hysterectomy.
Moreover, our case is not that of a woman whose sole medical concern was contraception. She had other medical problems: heavy menstrual flow of ten days' duration followed by spotting, a fibrotic uterus with second-degree prolapse (cervix descending about two inches into the vagina), urinary incontinence under stress, a second-degree cystocele allowing the bladder to intrude into the vagina, and a relaxed perineum (not yet a rectocele). Thus, accepting that upon preliminary discussion plaintiff wife told defendant doctor that she did not want scars (and ignoring that her discovery deposition made no reference to any such discussion and her original petition asserted no such factual circumstance), the question is *577 whether she has shown that she instructed the doctor not merely that she did not want surgery which by its nature would produce scars but that she did not want surgery which might through any complication subject her to any risk of scarring. (This is perhaps tantamount to saying she did not want surgery of any kind.) It is one thing to prefer simply not to have scars; it is another to prefer a life of discomfort and poor health over the remote possibility of a scar. The latter preference is unreasonable and cannot be inferred from a simple expression of a desire not to have scars, although one is free to have unreasonable preferences and one's doctor, upon being informed thereof, is obliged not to substitute his reason for his patient's unreason.
Plaintiff does not testify that she expressed her unreasonable preference. Moreover, the absence of any reference to her anti-scar stance in both her original simple malpractice petition and in her deposition makes it altogether unlikely that scarlessness could have been of such unparalleled importance to her.
Reversed at plaintiff's cost.
NOTES
[1] Perhaps even if no scarring resulted he would be theoretically liable for the medical costs of the uninformedly-consented-to, thus effectively unconsented-to, operation, and for the assault upon her personsubject to credit for giving her the permanent sterilization she wanted at the price (including the "assault" and all pain and suffering) she wanted to payperhaps a net of zero.