550 So.2d 787 (1989)
Elizabeth Richardson CARROLL and Timothy Ray Carroll, Plaintiff-Appellee,
v.
ST. PAUL INSURANCE COMPANY and Lawrence C. Hill, Defendant-Appellee.
No. 20798-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1989.
*788 Carruth, Cooper & Adams by William R. Carruth, Jr. and S. Alfred Adams, Baton Rouge, for intervenors-appellants, Douglas D. Green, Com'r of Ins., Office of Atty. Gen. and Louisiana Patient's Compensation Fund.
James R. Dawson, Shreveport, for plaintiff-appellee.
John M. Frazier, Shreveport, for intervenor-appellee, Ins. Co. of North America.
Mayer, Smith & Roberts by Alex F. Smith, Jr., Shreveport, for defendants-appellees, St. Paul Ins. Co. and Dr. Lawrence C. Hill.
Before FRED W. JONES, Jr., LINDSAY and HIGHTOWER, JJ.
LINDSAY, Judge.
This a medical malpractice case. The trial court awarded the plaintiffs, Elizabeth R. Carroll and her husband, Timothy Ray Carroll, damages in the amount of $408,425.20 in their action against the defendants, Dr. Lawrence Hill and his medical malpractice insurer, St. Paul Fire and Marine Insurance Company. Pursuant to LSA-R.S. 40:1299.42(B), the trial court held that the defendants were responsible for $100,000 of the damage award and the Louisiana Patient Compensation Fund was responsible for all damages assessed above $100,000, but not to exceed $500,000. The Louisiana Patient Compensation Fund has appealed the amount of damages awarded to the plaintiffs. The plaintiffs answered the appeal. We amend in part, reverse in *789 part and affirm in part the trial court judgment.

FACTS
In May, 1984, Mrs. Carroll began seeing Dr. Hill for various medical problems. She initially consulted Dr. Hill for treatment of a sinus infection. Dr. Hill prescribed an injection of Celestone, a steroid type of hydrocortisone which suppresses the functioning of the adrenal gland.
Between May, 1984 and September, 1986, Mrs. Carroll was frequently treated by Dr. Hill for medical conditions ranging from head colds to elbow injuries to back and muscle pain. In all instances, Dr. Hill injected Mrs. Carroll with Celestone. During this period of time she received 190 injections of Celestone. During 1986, Mrs. Carroll was receiving daily injections of Celestone.
The medical evidence reveals that the administration of this quantity of the drug was excessive. As a result of this massive overdose, Mrs. Carroll developed Iatrogenic Cushing's Syndrome. Her symptoms included hair growth on the arms and face, a buffalo hump on her back, rapid and excessive weight gain, thinning of the skin on her hands, redness of the hands, a weakening of the blood vessels in the hands, interruption of sleep patterns, excessive sweating, panic attacks, disturbance of the menstrual cycle and mood swings. Associated with the rapid weight gain, Mrs. Carroll experienced excessive stretching of the skin on her trunk and arms. This stretching caused tearing of the subcutaneous layer of the skin resulting in multiple striae or stretch marks over a large portion of her body. The syndrome can also cause bone thinning and cataracts.
In 1986 as a result of a work related back injury, Mrs. Carroll consulted another physician. At that time she was diagnosed as having Cushing's Syndrome caused by the overdose of Celestone and was immediately taken off the drug. Subsequently, a claim was filed with a medical review panel which found that Dr. Hill's treatment fell below the applicable standard of care and constituted malpractice.
The plaintiffs then filed suit to recover damages for medical expenses, lost income, pain and suffering, disfigurement and future medical expenses. Mr. Carroll claimed loss of services and loss of consortium.
The Insurance Company of North America filed a petition of intervention to recover medical expenses and workers compensation benefits paid to Mrs. Carroll.
In September, 1988, a trial on the merits was conducted. At trial, the parties stipulated that between May, 1984 and September, 1986, Mrs. Carroll received 190 injections of Celestone. It was also stipulated that her total medical expenses were $8,425.20, although it was agreed that the plaintiffs must prove a causal relationship between the medical expenses and the Cushing's Syndrome.
At trial, Mrs. Carroll detailed her symptoms, including a seventy pound weight gain, even though she was on an 800 calorie per day diet. Pictures were introduced into the record showing that Mrs. Carroll had experienced extreme tearing of her skin resulting in numerous red stretch marks all over her body. She also had extreme thinning of the skin on her hands. The blood vessels beneath the skin of her hands tended to burst when she exerted pressure. This made it difficult for her to continue her work as a workbench jeweler. She worked in her father's jewelry store but due to the condition of her hands, she could not continue her former occupation. Therefore, she had to become a salesperson at a reduced salary.
Mrs. Carroll and her husband testified that due to the symptoms caused by the overdose, she was not responsive to Mr. Carroll and, as a result, their marriage had suffered. The couple had seen a marriage counselor for approximately two and a half months during the course of their difficulties.
During the trial, several physicians testified for the plaintiffs, including a doctor of internal medicine, an endocrinologist, a dermatologist and a plastic surgeon. According to these experts, Mrs. Carroll's adrenal function, although suppressed by the Celestone *790 overdose, has returned to normal and she has not experienced significant bone loss. However, her hands will not improve significantly and she now has skin comparable to a seventy to eighty year old person who has worked outdoors.
Mrs. Carroll asserted she cannot work as a workbench jeweler because her hands will not tolerate the harsh chemicals used in polishing jewelry and the mechanical trauma associated with bending metal.
In addition, Mrs. Carroll has numerous permanent stretch marks, covering a large portion of her body, some of which can be improved by plastic surgery, but some, such as those on the arms, cannot be improved and are permanent.
In October, 1988, the trial court rendered judgment in favor of the plaintiffs, finding that the defendant physician "failed to meet the applicable standard of care" which was required, and that the doctor's conduct resulted in the plaintiff's injuries and resultant damages. Mrs. Carroll was awarded $100,000 in general damages, $75,000 for scarring and disfigurement, $150,000 for lost past and future income, $35,000 for lost medical insurance coverage, $13,425.25 in medical expenses and $20,000 for future cosmetic surgery. Mr. Carroll was awarded $15,000 for loss of consortium. The intervention by the Insurance Company of North America was recognized.
The plaintiffs were also awarded $300 per expert in expert witness fees. The defendants were ordered to pay the sum of $100,000 and the Louisiana Patient Compensation Fund was ordered to pay the amount of the judgment above $100,000. The record contains a receipt and release showing that the plaintiffs have received $100,000 from Dr. Hill and St. Paul Fire & Marine Insurance Company.
The Louisiana Patient Compensation Fund appealed the judgment, arguing that the awards are excessive. Mrs. Carroll answered the appeal, seeking an increase in the award for lost earnings.

GENERAL DAMAGES
The trial court awarded Mrs. Carroll $100,000 in general damages for physical and mental pain and suffering and disability. She was also awarded $75,000 for scarring and disfigurement. The Louisiana Patient Compensation Fund has appealed these awards as being excessive. The Fund argues there is no showing that Mrs. Carroll underwent acute physical pain and suffering. The Fund argues that, although Mrs. Carroll is entitled to a general damage award for permanent scarring, the award made by the trial court should be greatly reduced.
"General damages" are those which may not be fixed with any degree of pecuniary exactitude; they involve mental and physical pain and suffering, inconvenience, loss of intellectual gratification or physical enjoyment, or other losses of life-style which cannot be definitely measured in monetary terms. Prothro v. Dillahunty, 488 So.2d 1163 (La.App. 2d Cir.1986).
Before a trial court award for damages can be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. A damage award should not be disturbed by a reviewing court absent a showing of a clear abuse of the discretion vested in the trial court. Perniciaro v. Brinch, 384 So.2d 392 (La.1980); Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La.App. 2d Cir.1987); Harris v. Pineset, 499 So.2d 499 (La.App. 2d Cir.1986); writs denied 502 So.2d 114, 117 (La.1987).
It is only after an articulated analysis of the facts discloses an abuse of discretion that resort to prior awards in similar cases in proper. Reck v. Stevens, supra; Coco v. Winston Industries, Inc., supra; Higginbotham v. Ouachita Parish Police Jury, supra.
The appropriate procedure for testing whether the trier of fact has abused its discretion by making an excessive award is to determine whether the award can be *791 supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the fact finder. The converse of this rule is also true. In determining whether the trier of fact abused its discretion in making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. Higginbotham v. Ouachita Parish Police Jury, supra; Cutchall v. Great American Pump Company, 460 So.2d 1106 (La.App. 2d Cir.1984); Lindsay v. Toys, 499 So.2d 462 (La.App. 2d Cir. 1986). Therefore, because the present inquiry is whether the trial court's award for general damages was excessive, we must examine the facts contained in this record in the light most favorable to the plaintiff to determine whether the trial court abused its discretion.
A scar is a disfigurement of the body and when its position is noticeable in public circumstances, it is disfiguring and compensable. Chmurka v. Southern Farm Bureau Insurance Company, 357 So.2d 1207 (La.App. 4th Cir.1978).
Whether the scar is in itself disfiguring or whether its detracting features have been magnified in the mind of the plaintiff, it is in either case an injury that has produced mental anguish and hence is compensable. Chmurka v. Southern Farm Bureau Insurance Company, supra.
In the present case, Mrs. Carroll suffered not only the temporary effects of Cushing's Syndrome, such as suppression of adrenal function, weight gain, abnormal hair growth, and mood swings, but she has also been left with significant disfiguring stretch marks over most of her body. Additionally, the skin and blood vessels on her hands have been permanently damaged. The plaintiff's hands are now fragile and she is limited in the type of work she can do with her hands.
The record shows that some of the plaintiff's stretch marks can be improved with plastic surgery. However, some of the stretch marks are permanent. Although the record does not show that the occurrence of these stretch marks caused Mrs. Carroll any real physical pain, it is apparent that the psychological impact wrought by these scars is significant. Photographs introduced at trial show that the plaintiff would be required to carefully choose her clothing to conceal these scars, particularly those on her arms.
Therefore, a significant general damage award for the physical problems caused by Cushing's Syndrome and particularly the permanent scarring that resulted is proper. Nevertheless, although a significant award is justified, we find that the trial court's general damage award of $175,000 ($100,000 in general damages and an additional $75,000 for disfigurement) is excessive.
The record shows that Mrs. Carroll did not undergo severe physical pain and suffering during the development and continuation of Cushing's Syndrome. The record also shows that some of her symptoms, such as rapid weight gain, abated once the Celestone injections ceased. It also appears that her mental pain and suffering was also somewhat alleviated following the discontinuance of the steroid treatment. Therefore, considering these circumstances, we have concluded that the trial court's award is excessive.
Having found that the trial court abused its discretion by making an excessively high award, we may only lower the award to the highest reasonable point. Reck v. Stevens, supra. Only after a determination of abuse of discretion has been reached, as in the present case, is resort to prior awards appropriate for purposes of determining a proper award. Reck v. Stevens, supra.
Although all cases are different, we have found no cases in our jurisprudence which are similar to the facts found here. Cases dealing with scarring left by burns entail such an overriding concern for the physical pain and suffering endured by the victims that they are inapplicable to the instant case. The changes in Mrs. Carroll's appearance, the damage to her skin, the disability and the stretch mark scarring are all unique factors resulting from the drug overdose. Plaintiffs have not cited any cases which approach the trial court award for general damages and scarring. On the *792 other hand, the defendant contends that an award in the range of $25,000 to $35,000 would be the highest amount that could be awarded to Mrs. Carroll.
In support of its argument, the defendant has cited several cases. In Wiggins v. Arkansas Louisiana Gas Company, 441 So.2d 803 (La.App. 2d Cir.1983), this court affirmed an award of $100,000 to a plaintiff who suffered painful burns over nearly twenty-nine percent of his body, requiring skin grafts and resulting in significant scarring. In Horton v. Valley Electric Membership Corporation, 461 So.2d 375 (La.App. 2d Cir.1984), this court awarded $35,000 in damage resulting from an electrical shock. The plaintiff suffered burns to his hand, shoulder and foot. The plaintiff was hospitalized for five days and was left with internal injuries to his skeletal muscular system.
The defendant also relies upon Villetto v. Weilbaecher, 377 So.2d 132 (La.App. 4th Cir.1979) and Bourgeois v. Davis, 337 So.2d 575 (La.App. 4th Cir.1976). In Villetto, the plaintiff, as a result of improper medical treatment, suffered blisters on a small area on the back of her leg. Scarring and loss of pigmentation occurred. The Court of Appeal awarded $7,000 for the scarring and $8,000 for plaintiff's pain and suffering.
In Bourgeois, the trial court awarded $7,500 for the scar left by a surgical incision. (On appeal, the judgment was reversed, the appellate court finding no liability.)
We have reviewed these cases and compared them to Mrs. Carroll's injuries and her condition. In addition to plaintiff's weight gain, suppression of adrenal function, abnormal hair growth and mood swings, she has deep stretch marks over much of her torso, thighs, buttocks and underarms. These marks are too numerous to count. In addition, the plaintiffs hands appear as though scalded in hot water.
The plaintiff did not undergo actual physical pain during the formation of the stretch marks on her body. She has not experienced the same physical pain and suffering found in some of the above cited cases. However, it is apparent that she has suffered significantly. The scarring is extremely severe and in many instances permanent. Also, the redness and thinning of the skin and blood vessels on the plaintiff's hands is unsightly and permanent and has limited her work activities.
We therefore conclude the plaintiff's injuries deserve a higher award than that suggested by the defendant. Under the circumstances of this case, an award to Mrs. Carroll in the total amount of $90,000 for general damages, scarring and disfigurement will do substantial justice. Accordingly, the trial court award of general damages for physical and mental pain and suffering, and for disability, scarring and disfigurement is reduced to the total sum of $90,000.

LOSS OF CONSORTIUM
The Louisiana Patient Compensation Fund argues that the trial court award of $15,000 to Mr. Carroll for loss of consortium was excessive. The Fund contends that Mr. Carroll underwent no pain and suffering. The Fund also asserts that Mrs. Carroll was more concerned about her physical appearance than was Mr. Carroll. In addition, the Fund argues that Mr. Carroll testified that as soon as his wife ceased taking the Celestone injections, their marital problems resolved.
LSA-C.C. Art. 2315 provides that tort damages may include loss of consortium, service and society and shall be recoverable by the same respective categories of persons who would have a cause of action for wrongful death of an injured person. In Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985), a claim for loss of consortium was outlined to include the following: (1) love and affection, (2) society and companionship, (3) sexual relationship, (4) performance of material services, (5) financial support and (6) aid and assistance.
Such an award is to be overturned on appeal only upon a showing that the trial court abused its discretion in making the award. Only after such an abuse of discretion *793 has been found may the appellate court reduce the award to the highest reasonable point or raise it to the lowest reasonable point. Reck v. Stevens, supra.
In this case, the record shows that Mrs. Carroll experienced mood swings, thought herself unattractive due to the scarring caused by her drug overdose and was unresponsive to Mr. Carroll. In addition, the record shows that due to Mrs. Carroll's mental anguish, she was not capable of being as supportive as necessary to Mr. Carroll, who is disabled. The record shows that the plaintiffs were required to seek marital counseling due to their problems. It was not until after Mrs. Carroll stopped taking the Celestone injections and began receiving other medical care that the couple's relationship improved. Due to these factors, we find that, although the award of $15,000 for loss of consortium in this case is high, it does not constitute an abuse of discretion. Therefore, we affirm that portion of the trial court judgment.

LOSS OF INSURANCE COVERAGE
The trial court awarded Mrs. Carroll $35,000 for loss of insurance coverage. At trial, the plaintiffs asserted that due to Mrs. Carroll's reduced income resulting from her inability to continue her occupation as a workbench jeweler, she lacked the necessary funds to pay her medical insurance premium. Because the premium was late, her policy was cancelled. Because Mrs. Carroll had been diagnosed as having Cushing's Syndrome, the insurance company refused to reinstate her coverage when the payment was made. Due to her condition, she was unable to obtain medical insurance elsewhere.
The Louisiana Patient Compensation Fund argues the trial court erred in making this award, pointing out that Mrs. Carroll's insurance was cancelled due to her voluntary failure to timely pay her insurance premium, and not because of the effects of this injury or her inability to work. This assignment of error has merit.
Although Mrs. Carroll's income was reduced due to her condition, she was not without income. Her insurance coverage was cancelled due to her failure to pay the premium when due. We find nothing in the record to support this award. We find that the trial court erred in making an award for lost insurance coverage. Therefore, this portion of the trial court judgment is reversed and set aside.

LOST INCOME AND EARNING CAPACITY
The trial court awarded Mrs. Carroll $150,000 for loss of income and earning capacity. The Louisiana Patient Compensation Fund argues that the trial court erred in granting an award to Mrs. Carroll for lost income and lost earning capacity. The Fund contends that her decreased earnings were due to a back injury and a wrist injury, rather than to the Celestone overdose. The Fund argues that Mrs. Carroll sustained other injuries during the same period of time she was experiencing Cushing's Syndrome and that the syndrome resolved itself within sixty days of the time the Celestone injections were terminated. The Fund contends that the medical evidence did not prove that Mrs. Carroll had a lasting disability caused by the steroid overdose. The Fund also argues that the figures presented by the plaintiff's economist, Dr. Melvin Harju, are erroneous because they are based upon the difference in salary received by Mrs. Carroll as a sales clerk and that received by the workbench jeweler who replaced her, without a showing that Mrs. Carroll's production was comparable to that of her replacement.
The plaintiffs answered the appeal, seeking an increase in damages for economic loss caused by the drug overdose. The plaintiffs contend that the overdose permanently damaged Mrs. Carroll's hands, preventing her from ever returning to work as a workbench jeweler. They also contend that they proved at trial that the amount of Mrs. Carroll's lost future income was $310,262. The plaintiffs argued that the award for economic loss should be increased to this amount.
Lost future wages are intended to compensate a plaintiff for economic loss based upon the same or similar kind of work the *794 plaintiff was doing at the time of the injury. In computing loss of future income, it is first necessary to determine whether and for how long a plaintiff's disability will prevent him from engaging in work of the same or similar kind that he was doing at the time of the injury; it is necessary to ascertain whether he has been disabled from work for which he is fitted by training and experience. Morgan v. Willis-Knighton Medical Center, supra.
Factors to be considered in determining a proper award for lost future income are the plaintiff's physical condition before injury, the plaintiff's past work history and consistency thereof, the amount the plaintiff probably would have earned absent the injury complained of, and the probability that the plaintiff would have continued to earn wages over the remainder of his working life. Morgan v. Willis-Knighton Medical Center, supra; Cutchall v. Great American Pump Company, supra.
Awards for lost future income are inherently speculative and are intrinsically insusceptible of being calculated with mathematical certainty. The courts must exercise sound judicial discretion in determining these awards and render awards which are consistent with the record and which do not work a hardship upon either party. Morgan v. Willis-Knighton Medical Center, 456 So.2d 650 (La.App. 2d Cir.1984); Harris v. Pineset, supra.
In the instant case, the record shows that, at the time of trial, the plaintiff was thirty years old and had approximately three years experience working as a workbench jeweler. The plaintiffs showed that due to the condition of Mrs. Carroll's hands, it was extremely unlikely that she will ever return to work as a work bench jeweler. However, the record also shows that Mrs. Carroll is not totally disabled and is capable of working approximately forty hours per week as a sales clerk at the rate of $6.00 per hour. The plaintiffs presented evidence that in 1989, the work bench jeweler who replaced Mrs. Carroll, who is paid on a "per piece basis," will earn approximately $29,809 and Mrs. Carroll will earn approximately $12,480 as a sales clerk. The economic evidence presented by the plaintiff shows that, considering that Mrs. Carroll has a life work expectancy of 21.8 years, the present value of the difference between the work bench jeweler's salary and the sales clerk's salary is $310,262. However, the record contains no showing as to whether Mrs. Carroll's rate of productivity as a work bench jeweler was comparable to that of her replacement. Plaintiff's ability to perform production work in the future was obviously considered by the trial court. Based upon the record, we find that the trial court did not abuse its discretion in awarding Mrs. Carroll $150,000 to compensate her for her economic loss, past, present and future.

MEDICAL EXPENSES
The parties stipulated that Mrs. Carroll incurred $8,425.20 in medical expenses. The trial court awarded that amount. The trial court also awarded plaintiff $5,000 in charges that were paid to the defendant, Dr. Hill. The Louisiana Patient Compensation Fund objects to the award for medical services rendered by Dr. Hill. The Fund also argues that some of the other stipulated medical expenses were not proved to be causally connected to the Cushing's Syndrome.
The medical expenses outlined in the stipulation are as follows:

Dr. Raj Gandhi $ 922.00
Dr. Joseph Loewenstein 1322.50
South Park Hospital
(hospitalization 10/86) 2035.90
South Park Hospital
(outpatient tests 9/86) 104.00
South Park Hospital
(outpatient tests 11/86) 160.00
Willis-Knighton Hospital
(hospitalization 11/86) 2697.30
P & S Hospital
(hospitalization 5/87) 653.50
Dr. Joseph Womack 50.00
Dr. J.E. Smith 200.00
Dr. David Cooksey 35.00
Dr. James F. Gavin 45.00
LSUMC 200.00
 Total $8,425.20

The Fund contends that the plaintiffs failed to prove that expenses incurred with Drs. Womack, Cooksey, and Gavin were *795 causally related to the steroid overdose. The plaintiffs admit that the charges for these doctors are unrelated to the overdose and that these amounts should not be included. Accordingly, the sum of $130.00 is subtracted from the award.
The Fund also contends that the charges by LSU Medical Center are not related to the injury. However, the record shows that the expenses incurred at LSU Medical Center were for a bone densitometry test to determine if the steroid overdose had caused a bone loss. Therefore, these charges were properly included in the trial court award.
The Fund also argues that the plaintiffs failed to show that Mrs. Carroll's hospitalizations at South Park Hospital in October, 1986 or at Willis-Knighton Hospital in November, 1986 were related to the steroid overdose.
In October, 1986, Mrs. Carroll contracted a virus and was hospitalized at South Park Hospital. The record shows that because Mrs. Carroll's adrenal function was at that time suppressed due to the steroid overdose, hospitalization was necessary in order to closely observe her condition and insure that she did not go into shock. In November, 1986, Mrs. Carroll was hospitalized at Willis Knighton Hospital for medical testing, including an evaluation of her Cushing's Syndrome. Therefore, the expenses incurred during these hospitalizations were properly included in the trial court award.
Further, we see no error in granting Mrs. Carroll an award of $5,000 for medical expenses incurred for medical care which was performed by the defendant, Dr. Hill. Cf. Coleman v. Ballanco, 439 So.2d 469 (La.App. 4th Cir.1983).
For the above stated reasons, we amend the trial court judgment to reduce Mrs. Carroll's total award for medical expenses from $8,425.20 to $8,295.20.

FUTURE MEDICAL EXPENSES
The record shows that the appearance of some of Mrs. Carroll's scarring could be improved by plastic surgery and the cost of this treatment would be approximately $20,000. The trial court awarded Mrs. Carroll this amount, conditioned upon compliance with the requirements of LSA-R.S. 40:1299.43.[1]
The Louisiana Patient Compensation Fund argues that the trial court erred in making this award for medical treatment aimed at achieving purely cosmetic results and which is not necessary to relieve disability. The Fund also claims this award for future medical expenses should not have been awarded where the record failed to show that Mrs. Carroll intended to undergo such treatment. These arguments are meritless.
LSA-R.S. 40:1299.43(A)(2) provides that in medical malpractice claims tried by the court, the court's findings shall include a recitation of whether the plaintiff is in need of future medical care and related benefits and, if so, the amount thereof.
The trial court properly granted Mrs. Carroll an award for plastic surgery to correct her scarring. The court also properly complied with the statutory requirements of LSA-R.S. 40:1299.43(A)(2) for payment of future medical benefits by including in the judgment a finding that Mrs. Carroll may incur up to $20,000 in medical expenses to repair the physical damage which she suffered. Also, under the statutory scheme, this amount is not to be paid until the expense is actually incurred. Therefore, we affirm this portion of the trial court award.

CONTRIBUTORY NEGLIGENCE
The Louisiana Compensation Fund contends that Mrs. Carroll was contributorily negligent in continuing to see Dr. Hill and to receive the Celestone injections after she began to exhibit the symptoms of Cushing's Syndrome such as abnormal hair growth, weight gain and the development of a "buffalo hump" on her back. The *796 Fund argues that a percentage of negligence should be assessed to Mrs. Carroll and that her total damage award should be reduced proportionally.
However, LSA-C.C.P. Art. 1005 provides that contributory negligence is an affirmative defense which must be specially pleaded. If a litigant fails to plead a special defense, he will not be allowed to introduce evidence in connection with the defense at trial. City of Kenner v. Dwyer, 464 So.2d 824 (La.App. 5th Cir.1985). In the present case, the affirmative defense of contributory negligence was not pled in the trial court and no evidence of the defense was entered at trial. The defendant cannot now raise the defense for the first time on appeal. Therefore, the claim that Mrs. Carroll was contributorily negligent in developing Cushing's Syndrome cannot be considered.
This assignment of error has no merit.

CONCLUSION
For the above stated reasons, we reverse in part, amend in part and affirm in part the judgment of the trial court and recast the judgment as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DEGREED that there be judgment herein in favor of the plaintiffs, Elizabeth Richardson Carroll and Timothy Ray Carroll, and against the defendants, St. Paul Insurance Company and Dr. Lawrence C. Hill, in solido, in the following amounts, together with legal interest from date of demand for a medical review panel and all costs of these proceedings:

TO MRS. CARROLL:
 General damages for physical and mental
 pain and suffering, disability, scarring
 and disfigurement $ 90,000.00
 Loss of income and earning capacity
 (Economic loss) past, present and future $150,000.00
 Medical expenses already incurred
 a. Stipulated $8295.20
 b. Dr. Hill's charges 5000.00
 Total $ 13,295.20
 Future cosmetic surgery $ 20,000.00
 ___________
 MRS. CARROLL'S TOTAL $273,295.20
 AWARD
 TO MR. CARROLL: $ 15,000.00
 ___________
 TOTAL AWARD TO BOTH PLAINTIFFS $288,295.20

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiffs have established the need for future medical care and related benefits and that award of Twenty Thousand and No/100 ($20,000.00) Dollars for future cosmetic surgery is conditioned upon compliance with the requirements of LSA-R.S. 40:1299.43, to be withheld by the Patient's Compensation Fund until such time as the expenses are actually incurred.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the intervenor, Insurance Company of North America, in an amount necessary to reimburse intervenor for weekly worker's compensation benefits paid from mid-September, 1986, to January 4, 1987, and those medical expenses indicated above and paid by intervenor;
IT IS FURTHER ORDERED ADJUDGED AND DECREED that expert witness fees be set as costs and paid by defendants as follows:

Dr. Joseph Loewenstein $300.00
Dr. R.T. Gandhi 300.00
Dr. J.E. Smith 300.00
Dr. Stephen Ramey 300.00
Dr. James R. Bergeron 300.00
Dr. Melvin Harju 300.00

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendants, Dr. Lawrence C. Hill and St. Paul Insurance Company are not personally liable for said amounts in excess of One Hundred Thousand and No/100 ($100,000.00) Dollars, in accordance with LSA-R.S. 40:1299.42(B);
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Louisiana Patient Compensation Fund is made responsible for all those damages assessed above One Hundred Thousand and no/100 ($100,000.00) Dollars and up to Five Hundred Thousand and No/100 ($500,000.00) Dollars;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Commissioner of Insurance of the State of Louisiana, upon receipt of a certified copy of this judgment, comply with the provisions of LSA-R.S. 40:1299.44(B).
*797 AFFIRMED IN PART, REVERSED IN PART, AMENDED IN PART AND RENDERED.
NOTES
[1] We note that in reasons for judgment the trial court conditioned this award upon compliance with LSA-R.S. 40:1299.42, however, 40:1299.43, dealing with future medical care and related benefits, appears to be the correct section.