555 So.2d 990 (1989)
Kenneth D. KENNEDY
v.
Nick PARRINO, Jr. d/b/a Parrino Enterprises.
No. CA 88 1844.
Court of Appeal of Louisiana, First Circuit.
December 19, 1989.
Rehearing Denied February 8, 1990.
*991 Donald J. Mills, Baton Rouge, for Kennedy.
Calvin E. Hardin, Jr., Baton Rouge, for Parrino.
Before CARTER, SAVOIE, and ALFORD, JJ.
ALFORD, Judge.
The defendant, Nick Parrino, Jr., d/b/a Parrino Enterprises (Parrino) suspensively appeals the trial court's judgment rendered in favor of the plaintiff, Kenneth D. Kennedy (Kennedy) wherein the court found that Parrino had committed voluntary batteries upon Kennedy, but reduced Kennedy's recovery by 10 percent for his comparative fault. The court denied Kennedy's breach of contract claim in regard to bonuses allegedly owed to him. The court awarded Kennedy $20,000.00 general damages, $25,000.00 loss of wages and $3,586.61 special damages. Kennedy devolutively appeals the amount of the award.

*992 FACTUAL BACKGROUND
Kennedy had been employed as a working superintendent by Parrino, a construction contractor, for more than a year prior to the incident in question. In November of 1985, Kennedy underwent surgery for a ruptured lumbar disc, for which he received worker's compensation benefits. In January of 1986, prior to his release to return to work by his physician, he voluntarily returned to work with the understanding he would do no heavy labor but would serve primarily as a superintendent. His neurosurgeon, Dr. John R. Clifford, testified he was aware, sometime between March 7 and June 20, 1986, that Kennedy had gone back to work in a supervisory capacity; however, he had never fully released Kennedy as recovered from his surgery. From January until June of 1986, Kennedy worked as supervisor for Parrino, gradually increasing the amount of physical labor he performed. During that time, he testified that he did not experience any back pain from his surgery.
On June 17, 1986, Kennedy was on a construction job for Parrino when the two became engaged in a heated discussion about Kennedy's ability to get the work done. Kennedy indicated he only wanted to do supervisory work. When Parrino told him if he didn't like what he was doing, he could quit, Kennedy asked Parrino for his layoff slip and told Parrino he was quitting. Parrino then told Kennedy to take his equipment and leave the job site. Kennedy proceeded to pick up his skill saw and some other carpenter tools and to walk with these tools across the building construction site toward his truck. In the meantime, Parrino and his nephew, Donald R. Russell (Russell) had walked to the middle of the building being constructed and were engaged in conversation. On his way to his truck, Kennedy approached Parrino and Russell and asked about bonus money, and a loud, intense argument between Kennedy and Parrino ensued. They were pointing at each other and using loud and abusive language. Kennedy indicated he had something on Parrino. Parrino called Kennedy a "boy" and Kennedy retaliated with a challenge to go across the street to see how much of a man he was. However, they did not engage in any blows at that time and Kennedy turned away, with his tools in his hands, and proceeded to leave the area. Parrino pursued him, pushing him hard in the back, just above the area where surgery had been performed, with both hands. Kennedy fell forward and broke the fall with his tools. Kennedy then got up, exchanged some more words with Parrino, picked up the tools he had dropped and proceeded on toward his truck. Parrino followed him and pushed him again on his shoulder. Kennedy then went to the office at the job site to get some personal belongings and Parrino pushed Kennedy a third time. Kennedy finally left in his truck. Kennedy's back started hurting that same day, and he went to Dr. Clifford on June 20, 1986. Dr. Clifford found his symptoms nearly as bad as prior to his operation, started him on physical therapy, prescribed a lumbrosacral corset and found him disabled. He continued to see Dr. Clifford as well as go to physical therapy. In November of 1986, Dr. Clifford released him to return to supervisory work; however, Kennedy was still unemployed at the time of the instant trial.

PROCEDURAL HISTORY
Kennedy filed a tort and breach of contract suit against Parrino on December 5, 1986. He alleged that following his informing Parrino that "he would take his lay-off slip" and while complying with Parrino's order to "get off of his jobsite", Parrino, without provocation, "attacked petitioner by thrusting both of his fists, with great force, into petitioner's back." Kennedy also alleged that after he got up from the floor and while he was preparing to leave, "defendant suddenly, and again without provocation, pushed the petitioner against the side of the truck. Thus, again injuring his back." Kennedy further claimed that Parrino breached his agreement to pay Kennedy "a bonus of ten (10%) percent of the profits on all jobs on which he was the general superintendent." Parrino filed an answer to Kennedy's suit, *993 raising the affirmative defense of comparative negligence.
Trial on the merits was held on March 17 and 18, 1988. The matter was taken under advisement and oral reasons for judgment were issued by the trial court on May 2, 1988. A judgment in accordance with these reasons was signed on May 23, 1988. Motions for a new trial were filed by both parties; both motions were denied.
Parrino then perfected a suspensive appeal, alleging that the trial court erred in awarding a full year's lost wages for a five month injury and in failing to reduce the damages because of the mitigating circumstances created by plaintiff. Parrino, also, by supplemental assignment of error, alleged that the trial court erred in not rejecting plaintiff's tort demands because the worker's compensation laws provide the exclusive remedy for plaintiff's alleged claims, and there was no "intentional tort." Additionally, Parrino filed a motion raising the peremptory exception of no cause of action. Kennedy perfected a devolutive appeal, claiming that the trial court erred in substituting its opinion for that of an expert (Dr. Clifford) and in awarding an amount which was less than 88 percent of the amount calculated by their expert economist.

NO CAUSE OF ACTION
On appeal, Parrino raises the peremptory exception of no cause of action, alleging that plaintiff's sole remedy is in worker's compensation under La.R.S. 23:1032, the statute that sets out the exclusivity of the worker's compensation remedy and the employer's immunity from tort suit unless plaintiff proves his damages result from an intentional act. Bazley v. Tortorich, 397 So.2d 475 (La.1981). Such a peremptory exception can properly be raised for the first time on appeal. La.C.C.P. art. 2163; Genina Marine Services, Inc. v. Arco Oil & Gas Company, 499 So.2d 257 (La.App. 1st Cir.1986). An exception urging the objection of no cause of action must be decided upon the face of plaintiff's petition alone, and all well-pleaded allegations of fact are to be considered as true. Sanborn v. Oceanic Contractors, Inc., 448 So.2d 91 (La.1984).
As noted previously, plaintiff alleges in his petition that the defendant suddenly attacked him by thrusting both fists, with great force, into his back, and also pushed him into the side of a truck, injuring his back. Thus, we find that Kennedy, while not specifically alleging intent to injure, has alleged facts which, when considered as true, show that the defendant intended to cause plaintiff to suffer a contact which was offensive and at least slightly painful or harmful, without the plaintiff's consent. Caudle v. Betts, 512 So.2d 389 (La.1987). Accordingly, defendant's exception is denied.

EMPLOYMENT STATUS
We note that defendant's supplemental assignment of error for the court's failure to apply the worker's compensation laws as the exclusive remedy is the first time that this defense has been raised at any time during the whole proceeding. Employment status as an assertion of the employer's immunity from suit under La. R.S. 23:1032 is a special defense, or affirmative defense, that must be specifically pled in an answer. La.C.C.P. art. 1005. (Compare Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986), which classifies the plea that one is a statutory employer as an affirmative defense.) While not specifically enumerated as an affirmative defense in La.C.C.P. art. 1005, it is well settled jurisprudentially that the list therein is illustrative, not exclusive. Trahan v. Ritterman, 368 So.2d 181 (La.App. 1st Cir. 1979). Thus, we are unable to consider this newly raised defense issue for the first time on appeal.

MITIGATING CIRCUMSTANCES
The defendant also alleges that the trial court erred in failing to reduce the damages because of mitigating circumstances created by the plaintiff.
A battery is harmful or offensive contact with a person, resulting from an act intended to cause plaintiff to suffer such a contact. The requisite intention need not be *994 malicious, nor does there need to be an intent to inflict actual damage. It is sufficient if the actor intends to inflict either a harmful or offensive contact without the other's consent. Caudle, 512 So.2d at 391. Thus, it is evident from Parrino's actions that he intended the contact to be offensive. The fact that he may not have intended to inflict actual damage does not render him immune from liability. Caudle, 512 So.2d at 392.
Conduct or action which helps to create circumstances giving rise to injury, but which does not justify actual battery, should be considered in mitigation of damages. Thigpen v. Stern, 503 So.2d 1050 (La.App. 2d Cir.), writ denied, 506 So.2d 113 (La.1987). Although we have referred to mitigation of damages, in light of the principles of comparative fault under La. C.C. art. 2323, we more appropriately should use the comparative fault approach in determining damages arising out of the battery. Robinson v. Hardy, 505 So.2d 767 (La.App. 2d Cir.), writ denied, 508 So.2d 825 (La.1987); Harris v. Pineset, 499 So.2d 499 (La.App. 2d Cir.1986), writ denied, 502 So.2d 114 and 117 (La.1987). A review of the trial court's reasons for judgment shows that the judge believed that Kennedy's words and second confrontation with Parrino, while not justifying his actual battery, helped cause the physical results of the confrontation, and assessed Kennedy with ten percent (10%) fault, based on compartive negligence factors set out in Watson v. State Farm Fire & Casualty Insurance Co., 469 So.2d 967 (La.1985), and restated in Harris, 499 So.2d at 504.
A trial court's findings as to percentages of fault are factual and, in the absence of clear or manifest error, must be upheld on appeal. Triangle Trucking Co. v. Alexander, 451 So.2d 638 (La.App. 3d Cir.1984). As to credibility, the trial judge who actually hears and observes the witnesses give live testimony is in a better position to evaluate the credibility than a reviewing court which at best can only study the cold record. Burbank v. Le-Beouf, 471 So.2d 980 (La.App. 1st Cir. 1985). After reviewing the record and the trial court's reasons for judgment, we find no manifest error in his assessment of percentages of fault.

LOST WAGES
The defendant also claims that the trial court erred in awarding a full year's lost wages for a five month injury, since Dr. Clifford released Kennedy to return to light supervisory work in November of 1986.
A determination of the measure of damages will not be disturbed on appeal unless the trier of fact abused its much discretion in making the award, and then only to the extent of lowering it to the highest or raising it to the lowest point which is reasonably within the discretion afforded to the court. La.C.C. art. 2324.1. Scott v. Hospital Service District No. 1 of Parish of St. Charles, 496 So.2d 270 (La. 1986). It is also well settled jurisprudentially that the trial court's findings of fact will not be disturbed unless manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). A review of the record shows that the trial court considered the credibility of the witnesses and the doctor's findings in determining that the pushing incident was not the total cause or even a substantial cause of Kennedy's continuing physical complaints at the time of trial in 1988. The judge noted that Kennedy voluntarily returned to work following his disc surgery in January of 1986, prior to any release by Dr. Clifford, and that Kennedy "was not holding up well under the heavy work that he was doing during that period." Kennedy himself testified that he had performed increasingly heavy work on the job, but that he wanted to return to doing strictly supervisory work because of his back. While noting that the June 1986 incident caused Kennedy a substantial setback, the judge also stated that "[t]he disc and serious surgery performed on the disc is a continuing part of his problem." The judge further noted that Dr. Clifford, in his medical report of June 21, 1987, indicated that Kennedy was "about back where he was when he released him from that back surgery." While in fact Dr. Clifford never released him following the back surgery, it is apparent from the doctor's report and testimony *995 that this reference is relative to the doctor's approval for Kennedy to return to work in a supervisory capacity following his back surgery. It is also apparent that the judge felt that within one year of the June 1986 incident, any aggravation of Kennedy's prior back condition that had been caused by the June incident had abated, even though Kennedy had not returned to work and continued to experience pain. After reviewing the record, we cannot say that the judge's findings were manifestly erroneous. Thus, the judge did not abuse his discretion in awarding lost wages for approximately one year after the June incident, even though Dr. Clifford, for the purposes of unemployment compensation, had released Kennedy to return to light supervisory duty in November of 1986. This assignment of error is without merit.

EXPERT TESTIMONY
The plaintiff, Kennedy, claims that the trial court erred in substituting its opinion for that of an expert when the expert testimony is based upon correct facts and good reason. The trial judge in determining weight to give testimony of expert witnesses has much discretion. See Williams v. Anthony, 534 So.2d 458 (La.App. 1st Cir. 1988).
Kennedy strenuously contends that Dr. Clifford found "hard evidence" of a new injury, one entirely separate from his preexisting back problem that required disc surgery. The plaintiff also contends that the record established that Kennedy had recovered from his surgery. However, a review of Dr. Clifford's report shows that he indicated that, while Kennedy had a normal examination (no pain) in March of 1986, he did not release Kennedy as recovered from surgery but instructed Kennedy to return in approximately 3 months. Additionally, Dr. Clifford noted in his report that on June 20, Kennedy returned with a relapse and recurrence of symptoms of low back pain which he felt were primarily mechanical in origin. He specifically stated, "It is my feeling that his complaints are on the basis of a re-exacerbation of a prior problem."
In his testimony, Dr. Clifford explained that Kennedy, by March of 1986, had recovered to the point that he was not experiencing any back pain, but that restrictions had to be placed on him because he could reinjure himself due to the proximity of the surgery. He further explained that Kennedy's problems as to June 20, 1986, were mechanical in nature, that is, due to "looseness and laxness of the ligaments and supporting structure. It's not due to a ruptured disc." He further testified that the June 1986 incident probably aggravated Kennedy's pre-existing surgery, and that it is not unusual for somebody that has had back surgery to develop some back and leg pain in later years. Also, Dr. Clifford stated that Kennedy's EMG showed a mild radiculopathy as a result of the ruptured disc and that some of Kennedy's leg pain may have resulted from some degree of nerve damage as a result of the ruptured disc.
Thus, it is apparent that the court used Dr. Clifford's report and testimony in reaching the determination that the incident of June 1986 aggravated a pre-existing condition, the surgery itself from which he was not fully recovered, but that the pushes Kennedy received from Parrino were not a substantial cause in fact of his present problems. We find no abuse of discretion problem since the trial court did rely on Dr. Clifford's report and testimony, and we find no manifest error in the trial court's findings. This assignment of error is without merit. Our finding on this assignment of error pretermits any discussion of the court's failure to award the amount recommended by plaintiff's economist.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court in its entirety. All costs of this appeal are to be borne equally by Kennedy and Parrino.
AFFIRMED.
CARTER, J., concurs.